**GOULD INCORPORATED,**
**Plaintiff-Appellant,**

v.

**MITSUI MINING & SMELTING CO., LTD., a company of Japan, Miyakoshi Machine Tools Co., Ltd., a company of Japan, Pechiney Ugine Kuhlmann, a company of France, and Trefimetaux, a company of France, Defendants-Appellees.**

**No. 532, Docket 86–7703.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 12, 1986.

Decided Aug. 3, 1987.

---

P. Kevin Castel (Cahill Gordon & Reindel, New York City), for plaintiff-appellant.

Phillip H. Mayer (Lawrence S. Wick, Janice M. McLain, Leydig, Voit & Mayer, Chicago, Ill., of counsel), for plaintiff-appellant.

Edward E. Sachs (Gould, Inc., Rolling Meadows, Ill., of counsel), for plaintiff-appellant.

Peter J. Gartland (Peter A. Dankin, Lance Gotthoffer, Ann G. Kayman; Marks Murase & White, New York City, of counsel), for non-party witness-appellee Wender Murase & White.

Black McCusky Souers & Arbaugh, Canton, Ohio, of counsel, for defendant-appellee Mitsui Min. & Smelting Co., Ltd.

Covington & Burling, Washington, D.C., of counsel, for defendants-appellees Pechiney Ugine Kuhlmann and Trefimetaux.

Before MANSFIELD,* VAN GRAAFEILAND and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York (Louis L. Stanton, *Judge*) quashing a deposition subpoena *duces tecum* served by appellant Gould, Inc. ("Gould") upon the law firm of Wender Murase & White ("WMW"). We vacate and remand.

## BACKGROUND

Dale C. Danver, formerly employed by Gould, left the latter's employ in 1983 to form his own international consulting business in the field of copper foil technology. Gould contacted prospective Danver clients, and claimed that Danver was violating "his contract," Brief of Appellee at 3, presumably referring to an employment agreement containing restrictive convenants. Gould threatened litigation should these clients close any deals with Danver. Gould then sued Danver in the United States District Court for the Northern District of Ohio, alleging Danver's theft of Gould's trade secrets. In August, 1985, this suit was settled, and all claims against Danver were dismissed with prejudice. During the course of the suit, however, Gould assertedly learned that Danver had dealt with four foreign companies regarding the trade secrets: Mitsui Mining & Smelting Co., Ltd. ("Mitsui") and Miyakoshi Machine Tools Co., Ltd. ("Miyakoshi") of Japan and two French concerns, Pechiney Ugine Kuhlmann and Tretimetaux.

Gould further asserts that it ascertained during its action against Danver that Danver offered Gould's technical data to Mitsui, but Mitsui "ostensibly" declined the offer. Thereafter, according to Gould, Danver contracted to supply the data to

---

* Judge Mansfield participated in the oral argument of this appeal, and voted before his death on January 7, 1987 for the disposition set forth in this opinion.

Miyakoshi on behalf of an undisclosed Miyakoshi client, and did in fact supply the information. Gould suggests, based on the evidence produced in the terminated action, that Mitsui was actually the undisclosed Miyakoshi client. Gould protested; thereafter, Miyakoshi, represented by WMW, negotiated a termination agreement with Danver.

In October, 1985, Gould commenced a second action in the United States District Court for the Northern District of Ohio against Mitsui, Miyakoshi and the two French companies (the "Ohio action"). Gould alleged, *inter alia,* a conspiracy among the defendants to obtain Gould's trade secrets from Danver. At the heart of Gould's case is its claim that Miyakoshi was a mere *alter ego* of Mitsui; therefore, any of Danver's contacts with Miyakoshi could be imputed to Mitsui. Mitsui appeared in the action. Miyakoshi defaulted.

WMW is Mitsui's counsel in the Ohio action, and has represented Mitsui for a number of years, dating back prior to the time of the incidents complained of by Gould. Further, WMW represented Miyakoshi briefly early in 1985, to prepare the documents necessary to sever the consulting arrangement which then existed between Miyakoshi and Danver. Gould claims that WMW has associate Japanese lawyers who currently represent Miyakoshi in a suit brought there against Gould.

In mid-April, 1986, Gould served a notice of deposition and deposition subpoena on WMW seeking documents relating to Miyakoshi and its representation by WMW in connection with Miyakoshi's dealings with Danver.[1] On April 18, WMW objected to Gould's document request on several grounds, including the attorney/client and attorney work product privileges. WMW appeared at the deposition and gave testimony to develop an evidentiary record to support its claims of privilege; responsive documents were withheld. Gould indicated its intention to seek a ruling on the issue of privilege. *See* Joint Appendix at 20. Gould made no effort to acquire the relevant documents directly from Mitsui or Miyakoshi. Brief of WMW at 10. Nor did Gould undertake to narrow the scope of its subpoena. *Id.* Approximately nine weeks after the WMW deposition was closed, Gould moved before Judge Stanton pursuant to Fed.R.Civ.P. 45(d)(1) to enforce the deposition subpoena.

On August 12, 1986, Gould's motion came on to be heard before Judge Stanton, who had before him (1) the subpoena; (2) WMW's objections thereto; (3) the transcript of the deposition of WMW's designated witness together with the exhibits thereto; and (4) affidavits and memoranda of law submitted by both sides. Oral arguments were heard. The district court denied enforcement of the subpoena and ordered it quashed in a memorandum endorsement which stated: "Enforcement denied. Subpoena quashed. Question of sanctions deferred to trial court at conclusion of trial." Gould appeals, and we vacate and remand.

## DISCUSSION

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 (1982). *See Glendale Fed. Savings and Loan Ass'n v. Republic Ins. Co. (In Re Sur. Ass'n of Am.),* 388 F.2d 412, 414 (2d Cir.1967); *Republic Gear Co. v. Borg-Warner Corp.,* 381 F.2d 551, 554 (2d Cir.1967); *see also* 8 C. Wright & A. Miller, Federal Practice and

---

1. The notice of deposition described the subject matter of the deposition as "including":

(a) Circumstances of initial contact with and retaining of the Wender firm by Miyakoshi.
(b) Preparation of draft and final Technical Consultant Agreements dated from August to October 1984 between Miyakoshi and [Danver Technologies Group, Inc. ("DTG"), Danver's Company].
(c) Preparation of draft and final Termination Agreements dated in or before March 1986 between Miyakoshi and DTG.

(d) Reports concerning, and legal billings for, the work referred to above.
(e) Relationships of Miyakoshi with: Mitsui Mining and Smelting Co., Ltd.; Oak-Mitsui, Inc.; other Mitsui companies; Pechiney Ugine Kuhlmann; Trefimetaux; and other Pechiney companies.

Joint Appendix at 11. The notice of deposition requested the witnesses to produce all documents "which relate or refer" to these subjects, and the subpoena demanded their production.

Procedure § 2287 (1970) (party seeking discovery may appeal quashal of subpoena directed to nonparty in action pending in district outside that in which compliance with subpoena is sought); 9 *id.* § 2463 (same).

At the outset, we note the contention by WMW in footnote 4 at page 10 of its brief that Gould made no motion to compel production "before or during the taking of the deposition" of WMW, in the language of Fed.R.Civ.P. 45(d)(1). Since that deposition was "closed" on May 6, 1986, and Gould's motion was not served or filed until more than two months later, WMW argues that the motion is barred by Rule 45(d)(1).

■ *Kendrick v. Heckler*, 778 F.2d 253 (5th Cir.1985), and *Zinser v. Palmby (In Re Wheat Farmers Antitrust Class Action)*, 440 F.Supp. 1022, 1025 n. 1 (D.D.C.1977), are to the contrary, construing the quoted language as permissive rather than mandatory. *But see Williams v. Keenan*, 106 F.R.D. 565 (D.Mass.1985) (construing cognate language of the same rule), and *Kendrick*, 778 F.2d at 258 (dissenting opinion) (majority disregards plain language of rule). We do not reach the question of construction, since we do not agree that the WMW deposition was "closed" on May 6, 1986. Gould's attorney made clear early in the deposition (p. 14, also Joint Appendix at 20) that the question of document production would be the subject of a later court motion, and concluded the deposition by stating (p. 59) "I have no further questions *at this time*" (emphasis added). Under these circumstances, at least, Rule 45(d)(1) did not bar Gould's motion in the Southern District.

We are aware, as WMW points out, that the scope of our review is confined to ascertaining whether the district court abused its discretion in entering the order challenged on this appeal. *See, e.g., Baker v. F & F Investment*, 470 F.2d 778, 781 (2d Cir.1972), *cert. denied*, 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973).

Nevertheless, in this case we have no basis upon which to review the district court's order. Neither the transcript of the oral argument on Gould's Rule 45 motion nor the court's memorandum endorsement indicate the ground or grounds upon which the subpoena was quashed. In addition, the district court did not require WMW to substantiate its claims of privilege by making some sort of particularized showing akin to that required by Southern District Civil Rule 46(e)(2), nor did it conduct an independent *in camera* review of responsive documents. We do not mean to impinge on the admittedly broad discretion of the district court in cases such as this; we simply note that a meaningful review can be had only on the basis of a record indicating that an informed discretion was in fact exercised.

■ The situation at bar is not unlike that presented in *In re Grand Jury Subpoena Dtd. January 4, 1984*, 750 F.2d 223 (2d Cir.1984), where we reversed and remanded the quashal of a subpoena *duces tecum* because the record before us was "far too sparse to serve as a vehicle for consideration of whether" the claimed privilege existed. *Id.* at 224. In that case, concededly, we were asked to determine whether a "scholar's privilege" existed in the first instance, and we were concerned about the inadequacy of the record upon which we were expected to decide that issue. Although the attorney/client and work product privileges are firmly established in our law, we nonetheless feel that the inadequacy of the record before us, coupled with the district court's failure to specify the ground upon which its quashal was based, preclude a meaningful review at this time of the order entered below.

■ We recognize, of course, that communications between WMW and its clients for the purpose of obtaining or rendering legal advice, conducting the negotiation of the Miyakoshi-Danvers settlement, or defending the Gould lawsuit are privileged. *Upjohn v. United States*, 449 U.S. 383, 394–95, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981); *Fisher v. United States*, 425 U.S. 391, 403–04, 96 S.Ct. 1569, 1577–78, 48 L.Ed.2d 39 (1976). However, other documents received by WMW from its clients, which would not be privileged if they remained in the clients' hands, would not

acquire protection merely because they were transferred to WMW *Fisher, supra,* 425 U.S at 403–04, 96 S.Ct. at 1577–78; *Colton v. United States,* 306 F.2d 633, 639 (2d Cir.1962), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963). The narrow exception to this rule formulated in *Sporck v. Peil,* 759 F.2d 312 (2d Cir.), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985); *compare Berkey Photo, Inc. v. Eastman Kodak Co.,* 74 F.R.D. 613, 616 (S.D.N.Y.1977); *see also Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir.1986),[2] that the selection and compilation of documents by counsel for litigation purposes is protected opinion work product, may be applicable, but its application depends upon the existence of a real, rather than speculative, concern that the thought processes of WMW counsel in relation to pending or anticipated litigation would be exposed. Furthermore, the equities might not favor the application of the *Sporck* exception if the files from which documents had been culled by WMW were not otherwise available to Gould (the Miyakoshi documents) or were beyond reasonable access to Gould (the Mitsui files in Japan). We do not believe that either the district court or this Court can correctly resolve the parties' differences absent enlightenment in the above matters. To resolve all these considerations as they bear upon the production of specific documents, *in camera* examination of documents by the district court may become appropriate.

In light of the foregoing, it is obvious that WMW's application for sanctions against Gould must be denied.

## CONCLUSION

The order of the district court is vacated and the matter remanded for further proceedings consistent herewith. WMW's application for sanctions against Gould is denied.

**2.** The *Shelton* majority makes clear the disfavor in which the tactic of seeking discovery from adversary counsel is generally regarded, *id.* at 1327 *passim,* citing the landmark *Hickman v. Taylor,* 329 U.S. 495, 513, 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947); *see also id.* at 517, 67 S.Ct. at 396 (Jackson, J., concurring), and we suspect that this predisposition figured in the decision below. The point is generally well taken, but it is not a talisman for the resolution of all controversies of this nature. This is especially so here, since both the district court and we have limited knowledge concerning the relationship between the parties and the particulars of the Ohio action. Even the *Shelton* majority recognized circumstances in which taking the deposition of adversary counsel would be appropriate. *See* 805 F.2d at 1327.