318 F.3d 379
 In re GRAND JURY SUBPOENAS DATED MARCH 19, 2002 AND AUGUST 2, 2002.
The Mercator Corporation, James H. Giffen, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Respondents-Appellants,
v.
United States of America, Movant-Appellee.
 Docket No. 02-6239.
 United States Court of Appeals, Second Circuit.
 Argued: November 13, 2002.
 Decided: November 15, 2002.
 Opinion Filed: January 28, 2003.
 
 COPYRIGHT MATERIAL OMITTED James Benjamin, Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York, NY (Robert A. Johnson, Rex S. Heinke, Mark J. MacDougall, Heather J. Pellegrino, on the brief), for Respondents-Appellants.
 George S. Canellos, Assistant United States Attorney, Southern District of New York, New York, NY (James B. Comey, United States Attorney; Peter G. Neiman and Andrew J. Ceresney, Assistant United States Attorneys, on the brief), for Movant-Appellee.
 Before: KEARSE, SOTOMAYOR, RAGGI, Circuit Judges.
 RAGGI, Circuit Judge.
 
 
 1
 Appellants, The Mercator Corporation, its chairman James H. Giffen, and their attorneys, the law firm of Akin, Gump, Strauss, Hauer & Feld, L.L.P. ("Akin Gump"), appeal from the September 9, 2002 order of the District Court for the Southern District of New York (Denny Chin, Judge), granting the United States' motion to compel Akin Gump to produce bank records for thirty specific accounts at four Swiss banks called for in grand jury subpoenas dated March 19, 2002 and August 2, 2002. Appellants submit that in ordering production of the subpoenaed records, the district court abused its discretion in two ways: (1) by failing to recognize that the discrete bank records in Akin Gump's possession constituted attorney work product because counsel's selection and compilation of these records was part of an evolving strategy to defend Mercator and Giffen from possible criminal charges, and (2) by compelling production of this work product despite the United States' failure to demonstrate an inability to obtain the subpoenaed records from alternative sources. We conclude that appellants' work product claim, unsupported by any in camera identification or submission of the responsive documents in Akin Gump's possession, is simply too conclusory to meet their burden to show a "real, rather than speculative, concern" that the ordered production will reveal counsel's thought processes and strategies. Gould, Inc. v. Mitsui Mining & Smelting Co., 825 F.2d 676, 680 (2d Cir.1987). Accordingly, we affirm the district court's order compelling compliance with the grand jury subpoenas.
 
 I. Background
 
 2
 For several years, the United States Attorney for the Southern District of New York has been investigating possible violations of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-1 et seq., by corporations and persons doing business with senior officials of a particular foreign country.[1] Toward that end, more than two years ago, the United States filed a Mutual Legal Assistance Treaty ("MLAT") request with Swiss authorities seeking bank records relating to specific accounts held by the foreign country or its officials. As the government explains in its ex parte submission, the response received from Switzerland to date has been incomplete or unsatisfactory in several respects important to the prosecution of the charges under investigation.
 
 
 3
 Throughout the relevant time, Akin Gump has represented Mercator and Giffen, and, on their behalf, has communicated with prosecutors on matters relating to the pending criminal investigation. Specifically, in the fall of 2000, Akin Gump offered to produce records from six of the Swiss bank accounts identified in the MLAT request with the understanding that production did not waive future privilege claims by Akin Gump's clients. Prosecutors declined to accept the documents on these terms.
 
 
 4
 On March 19, 2002, a grand jury sitting in the Southern District of New York issued a subpoena to Akin Gump demanding production of any and all bank records in its possession relating to the six Swiss accounts discussed in 2000 with prosecutors. On August 2, 2002, it issued a second subpoena calling for Akin Gump's production of any and all bank records in its possession relating to twenty-four additional Swiss accounts, which records had also been sought pursuant to the MLAT request. In response to both subpoenas, Akin Gump invoked the work product doctrine, prompting prosecutors to file a motion with the district court on August 14, 2002 to compel compliance.
 
 
 5
 After reviewing the submissions of the parties and hearing oral argument on September 5, 2002, Judge Chin granted the motion to compel, entering a formal order on September 9, 2002. A few days later, on September 11, 2002, he issued a Memorandum Decision detailing his reasons for rejecting appellants' work product claim. See In re Grand Jury Subpoenas Dated March 19 and August 2, 2002, No. M 11-189, 2002 WL 31040322 (S.D.N.Y. Sept.12, 2002). Carefully reviewing the law applicable to the attorney work product doctrine, Judge Chin concluded that the subpoenaed bank records did not in and of themselves constitute work product because they were "the pre-existing records of third parties, created and maintained in the ordinary course of business by those third parties without any reference to litigation whatsoever." Id. at *4. To the extent appellants argued that Akin Gump's selection and compilation of specific bank records transformed the documents into attorney work product, disclosure of which would reveal counsel's developing defense strategy, Judge Chin noted that in this circuit, "qualifying the `selection' of records for [work product] protection `depends upon the existence of a real, rather than speculative, concern that the thought processes of ... counsel in relation to pending or anticipated litigation would be exposed.'" Id. at *6 (quoting Gould, Inc. v. Mitsui Mining & Smelting Co., 825 F.2d at 680). He expressly found that "Akin, Gump has failed to demonstrate such a genuine concern." Id. Judge Chin ruled that, in any event, equity warranted disclosure of the subpoenaed records because it was "unlikely" that they would be procured from any other source given the difficulties that had plagued the MLAT request, as well as a 1987 Memorandum of Understanding between Switzerland and the United States limiting attempts to subpoena information from United States branches of Swiss banks. Id. at *7 and n. 2.
 
 II. Discussion
 A. Standard of Review
 
 6
 We review the district court's rulings on appellants' work product claim for abuse of discretion. See In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir.2000); United States v. Adlman, 68 F.3d 1495, 1499 (2d Cir.1995). A district court abuses its discretion when "(1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision — though not necessarily the product of a legal error or a clearly erroneous factual finding — cannot be located within the range of permissible decisions." Zervos v. Verizon New York, Inc., 252 F.3d 163, 169 (2d Cir.2001) (footnote omitted); see United States v. Adlman, 68 F.3d at 1502 (remanding case where district court applied incorrect legal standard to work product claim). We find no such error in this case. To the contrary, we conclude that Judge Chin's decision fully comports with applicable law.
 
 B. The Attorney Work Product Doctrine
 
 7
 The attorney work product doctrine, now codified in part in Rule 26(b)(3) of the Federal Rules of Civil Procedure and Rule 16(b)(2) of the Federal Rules of Criminal Procedure, provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial. Both "distinct from and broader than the attorney-client privilege," United States v. Nobles, 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), the work product doctrine permits discovery of "documents and tangible things" prepared by or for counsel in anticipation of civil litigation "only upon a showing that the party seeking discovery has substantial need of the materials ... and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means," Fed.R.Civ.P. 26(b)(3). In the context of a pending criminal prosecution, the doctrine is even stricter, precluding discovery of documents made by a defendant's attorney or the attorney's agents except with respect to "scientific or medical reports." Fed.R.Crim.P. 16(b)(2).
 
 
 8
 It was in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), that the Supreme Court first recognized the work product doctrine as essential to the proper functioning of our adversarial system.
 
 
 9
 In performing his various duties ... it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.... This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways — aptly though roughly termed... as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.
 
 
 10
 Id. at 510-11, 67 S.Ct. 385; see also United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir.1998) (stating that work product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies `with an eye toward litigation,' free from unnecessary intrusion by his adversaries" (quoting Hickman v. Taylor, 329 U.S. at 511), 67 S.Ct. 385). Although the doctrine is most frequently asserted as a bar to discovery in civil litigation, the Supreme Court has characterized its "role in assuring the proper functioning of the criminal justice system" as "even more vital." United States v. Nobles, 422 U.S. at 238, 95 S.Ct. 2160. For precisely this reason, we have entertained work product challenges to grand jury subpoenas even though neither Fed.R.Civ.P. 26(b)(3) nor Fed.R.Crim.P. 16(b)(2) strictly applies in that context. See In re Grand Jury Proceedings, 219 F.3d 175; In the Matter of Grand Jury Subpoenas Dated October 22, 1991, and November 1, 1991, 959 F.2d 1158 (2d Cir.1992) (hereinafter "In re Grand Jury Subpoenas (Paul Weiss)").
 
 
 11
 In so doing, however, we have been mindful of the "fundamental maxim," recognized "[f]or more than three centuries... that the public ... has a right to every man's evidence," United States v. Bryan, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950) (quoting 8 J. Wigmore, Evidence § 2192, at 64 (3d ed.1940)); accord Jaffee v. Redmond, 518 U.S. 1, 9, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996); Trammel v. United States, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980); United States v. Nixon, 418 U.S. 683, 708-10, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), and that this right is "[n]owhere ... stronger than in the context of a valid grand jury subpoena," In re Grand Jury Proceedings, 219 F.3d at 186 (quoting In re Sealed Case, 676 F.2d 793, 806 (D.C.Cir.1982)). It is, moreover, well established that the party invoking a privilege bears the burden of establishing its applicability to the case at hand. See, e.g., United States v. International Bhd. of Teamsters, 119 F.3d 210, 214 (2d Cir.1997) (holding that party invoking attorney-client privilege bears the burden of establishing "all of its elements"); United States v. Construction Prods. Research, Inc., 73 F.3d 464, 473-74 (2d Cir.1996) (rejecting attorney-client and work product privilege claims where party failed to establish the essential elements). The burden is a heavy one, because privileges are neither "lightly created nor expansively construed." United States v. Nixon, 418 U.S. at 710, 94 S.Ct. 3090; see also United States v. International Bhd. of Teamsters, 119 F.3d at 214 (holding that when privilege interferes with public's right to evidence, it must be "strictly confined within the narrowest possible limits consistent with the logic of its principle" (internal quotations omitted)). Instead, privileges are recognized "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." Trammel v. United States, 445 U.S. at 50, 100 S.Ct. 906 (quoting Elkins v. United States, 364 U.S. 206, 234, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., dissenting)); accord Jaffee v. Redmond, 518 U.S. at 9, 116 S.Ct. 1923.
 
 
 12
 As we previously have made plain, and as Judge Chin correctly recognized, the principle underlying the work product doctrine — sheltering the mental processes of an attorney as reflected in documents prepared for litigation — is not generally promoted by shielding from discovery materials in an attorney's possession that were prepared neither by the attorney nor his agents. See In re Grand Jury Subpoenas (Paul Weiss), 959 F.2d at 1166-67 (rejecting work product claim with respect to telephone company records in possession of former attorneys of criminal target). Thus, the work product doctrine does not extend to documents in an attorney's possession that were prepared by a third party in the ordinary course of business and that would have been created in essentially similar form irrespective of any litigation anticipated by counsel. See United States v. Adlman, 134 F.3d at 1202.
 
 C. "Selection and Compilation" Exception
 
 13
 Appellants submit that an exception to this third-party documents rule applies when an attorney has so specifically selected and compiled such documents in anticipation of litigation that production would necessarily reveal the attorney's developing strategy. This argument relies largely on decisions in two civil cases from outside this circuit: Sporck v. Peil, 759 F.2d 312 (3d Cir.1985); and Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir.1986). In both cases, the issue was not so much whether the work product doctrine shielded counsel from producing certain documents, for it appears they had been produced in the course of discovery; rather, the issue was whether counsel was obliged to identify from voluminous discovery materials those discrete documents that the attorney had selected for review with his client in advance of deposition, see Sporck v. Peil, 759 F.2d at 313, or that an attorney specifically recalled as existing in her client's files, see Shelton v. American Motors Corp., 805 F.2d at 1326. The courts ruled that such narrowly focused inquiries constituted impermissible intrusions into attorneys' thought processes in preparing their clients' defenses. See Shelton v. American Motors Corp., 805 F.2d at 1329;[2] Sporck v. Peil, 759 F.2d at 316.
 
 
 14
 Citing Sporck, we too have observed that "where a request is made for documents already in the possession of the requesting party, with the precise goal of learning what the opposing attorney's thinking or strategy may be, even third-party documents may be protected." In re Grand Jury Subpoenas (Paul Weiss), 959 F.2d at 1166-67 (distinguishing Sporck by noting, inter alia, that the subpoenaed telephone records appeared to be unavailable to the grand jury except from the law firm). That, however, is clearly not this case. The grand jury does not already possess the bank records subpoenaed from Akin Gump, at least not all of them.[3] Further, the challenged subpoenas, in demanding any and all records for thirty specific Swiss bank accounts, are designed not to "glean what [bank records Akin Gump] deems relevant" but to mirror MLAT requests that the government has pursued without success for more than two years. Id. at 1167 (holding that request for all telephone records for seven numbers over five-year period presented minimal risk of disclosing attorney's thought processes). Indeed, at oral argument, prosecutors represented that they will not attempt to authenticate the subpoenaed bank records through a member of the Akin Gump firm.
 
 
 15
 Appellants submit that work product protection for an attorney's "selection and compilation" of third-party documents should not depend on the subjective intent of the prosecutors, but rather on an objective consideration of whether the disclosure of the documents will necessarily reveal the attorney's thought processes in anticipation of litigation. We agree that subjective intent is only one among many factors to be weighed in making an objective determination of whether documents constitute work product. But that conclusion hardly benefits appellants.
 
 
 16
 Not every selection and compilation of third-party documents by counsel transforms that material into attorney work product. To fit within what we have repeatedly characterized as a "narrow exception" to the general rule that third-party documents in the possession of an attorney do not merit work product protection, Gould, Inc. v. Mitsui Mining & Smelting Co., 825 F.2d at 680; accord In re Grand Jury (Paul Weiss), 959 F.2d at 1167, the party asserting the privilege must show "a real, rather than speculative, concern" that counsel's thought processes "in relation to pending or anticipated litigation" will be exposed through disclosure of the compiled documents, id. This burden of objective proof cannot be met through conclusory ex parte affidavits, such as those filed by appellants with the district court in this case, which simply assert that Akin Gump possesses only a subset of the materials subpoenaed and that this subset was created pursuant to a carefully orchestrated defense strategy. Akin Gump's failure to disclose that strategy ex parte to the district court made it impossible for Judge Chin to determine — and makes it impossible for us to review — whether the responsive subset indeed reflects Akin Gump's discriminating selection, or, instead, whether the subset is simply the product of document maintenance practices by the various banks, a lack of cooperation from some of the account holders, or some combination of these and other factors. Without such disclosure, no court can decide if Akin Gump's work product concern is real, or only speculative. Similarly troubling is the firm's failure to identify or submit the responsive documents for in camera review, a practice both long-standing and routine in cases involving claims of privilege. See generally, In re Dow Corning Corp., 261 F.3d 280, 282-83 (2d Cir.2001) (submitting documents to district court for in camera review of attorney-client and work product claims); In re Richard Roe, Inc., 168 F.3d 69, 71 (2d Cir.1999) (reviewing documents in camera to evaluate claims of attorney-client and work product protection); United States v. Adlman, 134 F.3d at 1204 (conducting in camera review of memorandum for which work product protection was asserted); In re Six Grand Jury Witnesses, 979 F.2d 939, 942 (2d Cir.1992) (reviewing cost analyses in camera where witnesses claimed preparation was at behest of counsel and constituted work product); In re Grand Jury Subpoenas (Paul Weiss), 959 F.2d at 1162 (finding, after in camera review, that subpoenaed telephone company records did not constitute attorney work product); Gould, Inc. v. Mitsui Mining & Smelting Co., 825 F.2d at 680 (vacating district court's order quashing subpoena given its failure to develop record on claim of work product privilege, including failure to conduct in camera inspection of subpoenaed documents, and to particularize its findings). Without reviewing the documents, the district court could not ascertain whether Akin Gump's collection was missing only a few bank records out of a voluminous mass, see In re Grand Jury Subpoenas (Paul Weiss), 959 F.2d at 1167 (holding that where document compilation is voluminous, risk of disclosing attorney strategy is minimized), or whether the subset consisted of so few records focused on such discrete transactions that counsel's strategic thinking was apparent, or something in between the two. Moreover, without the documents, the district court could not consider the possibility of issuing a protective order that disclosed some, if not all, of the account records in Akin Gump's possession to the grand jury, thereby confounding any conclusions that might be drawn about counsel's selection strategy. See generally Fed.R.Civ.P. 26(b)(3) (providing for protective orders when the government demonstrates substantial need for privileged material and no alternative source).
 
 
 17
 In sum, both the law and the facts support the district court's conclusion that appellants failed to demonstrate a real rather than speculative concern that Akin Gump's production of its collection of Swiss bank records to the grand jury would necessarily reveal counsel's thought processes in anticipation of litigation. We hold that the district court did not abuse its discretion in ruling that appellants failed to satisfy the burden of proof that rests with a party asserting privilege.
 
 III. Conclusion
 
 18
 The district court's order compelling the Akin Gump law firm to comply with the Grand Jury subpoenas dated March 19, 2002 and August 2, 2002 is hereby AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Because both sides have filed submissions under seal andex parte, and because a grand jury investigation is ongoing, our discussion of the background to this appeal is limited to those facts necessary to an understanding of the legal conclusions reached in this case.
 
 
 [2]
 InShelton, not only had the documents at issue already been produced together with reams of other discovery materials, but American Motors proposed to produce a corporate official in lieu of its attorney to respond to deposition inquiries about the existence of specific records in its files. See Shelton v. American Motors Corp., 805 F.2d at 1327. Under these circumstances, the court found that questioning counsel violated the work product doctrine, because her ability to recall the existence of specific documents in her client's files would "likely ... be limited to those ... she ha[d] selected as important to her legal theories." Id. at 1329.
 
 
 [3]
 Appellants submit that Akin Gump should not be required to produce any Swiss bank records already in the grand jury's possession, and they urge that the subpoenas be modified to exclude these documents. The United States opposes this request on the grounds that amendment will alert appellants to evidence before the grand jury. Appellants respond that this is the same concern that informs their work product claim. The analogy is inapt because it conflates the presumptive secrecy applicable to grand jury proceedings,see Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 399, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959) (recognizing grand jury secrecy as a policy "older than our Nation itself"); accord In re Petition of Craig, 131 F.3d 99, 101 (2d Cir.1997), with the more narrowly tailored protection that shields attorney work product if a party can persuasively demonstrate the doctrine's applicability to the circumstances at hand, see United States v. Construction Prods. Research, Inc., 73 F.3d at 473-74 (rejecting work product claim where party failed to produce supporting documentation).