UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2006

(Argued: July 13, 2007                    Decided: November 16, 2007)

Docket No. 05-6891-cv

————————

IN RE GRAND JURY SUBPOENA DATED JULY 6, 2005,

————————

Before:

POOLER, PARKER, B.D., and WESLEY, *Circuit Judges*.

Appeal from orders of the Eastern District of New York (Garaufis, *J.*), entered on October 19, 2005 and December 1, 2005, directing Appellant to comply with a grand jury subpoena dated July 6, 2005.

AFFIRMED.

————————

PAULA SCHWARTZ FROME, Law Office of Paula Schwartz Frome, Esq., Garden City, New York, *for Appellant*.

ROBERT M. RADICK, Assistant United States Attorney (Jo Ann M. Navickas, Assistant United States Attorney, Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York *on the brief*) Brooklyn, New York, *for Appellee*.

————————

RICHARD C. WESLEY, *Circuit Judge*:

Appellant contends that the district court erred in concluding that recordings he made of conversations with a business colleague were not protected by attorney work product privilege, the Fifth Amendment, or attorney-client privilege. In this opinion, we hold that the district court did not err in concluding that while Appellant's recordings were fact work product, the government established that the grand jury had a substantial need for the recordings and that the information contained on them could not be obtained through other means. In a separate summary order filed today, we reject Appellant's remaining claims. We therefore AFFIRM the judgment below.

## Background

Appellant,[1] a former mortgage broker, is the subject[2] of an ongoing grand jury investigation. He appeals from sealed orders of the United States District Court for the Eastern District of New York (Garaufis, J.) dated October 19, 2005 and December 1, 2005. Collectively, the orders directed him to comply with a July 6, 2005 grand jury subpoena that required him to produce copies of recordings[3] he surreptitiously made of conversations with another mortgage

---

[1]Because both sides have filed submissions under seal, and because the grand jury investigation is ongoing, our discussion of the background to this appeal is limited to those facts necessary to an understanding of the legal conclusions reached in this case.

[2]While Appellant refers to himself as a "target" of the investigation, the government contends that he is only a "subject" of the investigation. Appellant has not been charged in this matter. *See United States v. Calandra*, 414 U.S. 338, 352 n.8 (1974) (distinguishing between criminal defendant and witness subpoenaed to testify before grand jury).

[3]Appellant refers to the disputed evidence as "recording or recordings"; we adopt the plural for simplicity's sake, and do not intend to imply anything about the actual number of recordings.

2

broker ("Broker")—also a subject of the investigation.

In January 2005, a prosecutor with the United States Attorney's Office for the Eastern District of New York contacted Appellant's counsel and indicated that Appellant was a subject of a grand jury investigation. Appellant and his attorney met twice—on January 12, 2005, and May 15, 2005—with the prosecutor and several federal agents. There was no proffer agreement covering either meeting. At both, Appellant discussed his role in certain transactions, and at the latter meeting, appellant indicated that he had surreptitiously recorded conversations with Broker sometime after January 12, 2005. He explained that he made the recordings on the advice of his counsel to protect himself and that the recorded conversations related to real estate transactions. The prosecutor then informed Appellant that he intended to seek a grand jury subpoena for the recordings. Appellant's attorney protested that the recordings were not subject to production, raising the Fifth Amendment privilege against self-incrimination and attorney-client privilege. The government did not ask Appellant any questions about the contents of the tape recordings.

An agent of the Federal Bureau of Investigation served Appellant with a grand jury subpoena that required Appellant to produce, *inter alia*, "[o]riginals of any and all tape recordings of conversations between you and [Broker]." The next day, Appellant's attorney refused in writing to produce the requested materials, invoking several Fifth Amendment privilege claims and the attorney-client privilege.

The government moved to compel compliance with the grand jury subpoena. The district court issued a sealed memorandum and order rejecting all of Appellant's claims. The court made a preliminary finding that Appellant failed to establish that the tapes should be protected

3

under the work product doctrine, but because it was "conceivable that [Appellant] could make a showing sufficient to meet [his] burden," the court directed the parties to submit supplemental briefs regarding whether the work product doctrine applied.

Appellant submitted an *ex parte* affirmation of counsel and a brief in which he argued that the recordings constituted opinion attorney work product. The government conceded that the recordings appeared to have been generated in anticipation of litigation and thus were ordinary or fact work product, subject to qualified protection. The government contended that disclosure would be appropriate if it showed substantial need for the recordings and that it was unable to obtain equivalent evidence by other means. The government argued that it needed the recordings because they presumably contained Broker's candid discussions of his role in the scheme, which were relevant to the grand jury's investigation into whether Appellant, Broker, and others had violated federal criminal law. The government pressed that the recordings provided uniquely valuable evidence because they were not subject to impeachment or fading memory. As a result, the government contended it was entitled to the recordings even though they were fact work product.

In a sealed memorandum and order, the district court required Appellant to comply with the grand jury subpoena. The district court agreed that the recordings were fact work product but held that, under the "standard put forth in Rule 26(b)(3) of the Federal Rules of Civil Procedure," the government demonstrated substantial need for the information contained in the recordings and that the recordings were unique evidence that could not be obtained through other means. The court also determined that Appellant failed to show that the recordings would reveal

4

his attorney's mental impressions or litigation strategies, noting that Appellant had not submitted the recordings for *in camera* review. As a result, the court held that the recordings were not entitled to the heightened protection afforded opinion work product.

This appeal followed.

DISCUSSION

**I. Work Product**

The attorney work product doctrine "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2003). The party invoking the privilege bears the heavy burden of establishing its applicability. *Id.* at 384. This Court reviews the district court's ruling on a work product claim for abuse of discretion. *See, e.g.*, *Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, 12 (2d Cir. 1989). A district court abuses its discretion "when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001) (footnote omitted); *see United States v. Adlman*, 68 F.3d 1495, 1502 (2d Cir. 1995) (remanding case where district court applied incorrect legal standard to work product claim).

**A. The Recordings are Fact Work Product**

There are two types of work product, ordinary or fact (herein "fact") and opinion. As we have stated previously, fact work product may encompass factual material, including the result of

5

a factual investigation. *See In re Grand Jury Subpoena Dated Oct. 22, 2001*, 282 F.3d 156, 161 (2d Cir. 2002). In contrast, opinion work product reveals the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative," and is entitled to greater protection than fact work product. *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998) (quoting Fed. R. Civ. P. 26(b)(3)). To be entitled to protection for opinion work product, the party asserting the privilege must show "a real, rather than speculative, concern" that the work product will reveal counsel's thought processes "in relation to pending or anticipated litigation." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d at 386 (quoting *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 680 (2d Cir. 1987)).

Appellant contends that the recordings are opinion work product. He asserts that the "topics and issues" discussed on the recordings "could reveal attorney thought processes," and argues that the district court erred in finding that the recordings were only fact work product. Furthermore, the attorney who represented Appellant when the subpoena was served alleged, in an *ex parte* affirmation submitted to the district court and this Court, that he gave Appellant instructions regarding the conversations with Broker. Appellant argues that the affirmation "demonstrates that the tape recording would be covered by the opinion portion of the work product privilege."

Appellant is wrong. Since Appellant's arguments and the affirmation are "mere[ly] conclusory or ipse dixit assertions," he did not carry his "heavy burden" of demonstrating the applicability of the privilege; consequently, the district court did not err in concluding that he failed to prove that the recordings were opinion work product. *In re Grand Jury Subpoena*

6

*Dated Jan. 4, 1984*, 750 F.2d 223, 225 (2d Cir. 1984) (internal citation omitted). Furthermore, Appellant did not produce the recordings, either to the district court or this Court, for *in camera* review. Making an *in camera* submission of materials that counsel contends are privileged is "a practice both long-standing and routine in cases involving claims of privilege." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d at 386 (collecting cases); *see also In re County of Erie*, 473 F.3d 413, 416 (2d Cir. 2007). Such a submission would have permitted the district court, in the first instance, to assess whether disclosure of the materials would have, indeed, revealed counsel's legal strategies. The district court could have then determined whether there were portions of the recording that were entitled to only fact work product protection and portions that were entitled to opinion work product protection, and proceeded accordingly. Because the burden of showing entitlement to a privilege is on the party asserting that privilege, *see, e.g.*, *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d at 224-25, Appellant bears the consequences of not submitting his recordings for *in camera* review. The district court did not abuse its discretion in concluding that the recordings were entitled to protection as fact work product only, because it is clear that such tape recordings are less reflective of an attorney's thought processes than his notes or memoranda would be. *See In re Grand Jury Subpoena Dated Nov. 9, 1979*, 484 F. Supp. 1099, 1104 (S.D.N.Y. 1980).

**B.     The District Court did not Err in Concluding that the Government Showed that the Grand Jury had a Substantial Need for the Information Contained in the Recordings, which Could not be Obtained Through Other Means**

Although the work product doctrine is most often applied in civil cases, its "role in assuring the proper functioning of the criminal justice system is even more vital." *In re Grand*

7

*Jury Proceedings*, 219 F.3d 175, 190 (2d Cir. 2000) (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)).  It is clear that the work product doctrine applies to grand jury proceedings, but arguably less clear what species of work product protection a court should apply.[4]  *See, e.g.,* *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d at 384; *In re Grand Jury Proceedings*, 219 F.3d at 190.

As an initial matter, we have held that Rule 26(b)(3)[5] of the Federal Rules of Civil Procedure "obviously does not apply to grand jury subpoenas." *In re Grand Jury Subpoena*, 599 F.2d 504, 509 (2d Cir. 1979).  Rule 16(b)(2)[6] of the Federal Rules of Criminal Procedure protects

---

[4]After oral argument, we requested the parties brief the following issue:  "whether Federal Rule of Criminal Procedure 16(b) bars a Grand Jury, in a criminal proceeding, from obtaining attorney-work product."

[5]Federal Rule of Civil Procedure 26(b)(3)  provides, in relevant part:

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.  In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

[6]Rule 16(b)(2) provides, in relevant part:

> Information Not Subject to Disclosure.  Except for scientific or medical reports, Rule 16(b)(1) does not authorize discovery or inspection of:
> (A) reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's

"reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent during the case's investigation or defense," Fed. R. Crim. P. 16(b)(2)(A), but "posits a pre-trial proceeding in which there is a known defendant," *In re Grand Jury Subpoena*, 599 F.2d at 509. Thus, neither Rule 26(b)(3) nor Rule 16(b)(2) is a perfect fit in the grand jury context. *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d at 384.

It has long been recognized that the grand jury has a right to "every man's evidence" and that there is a "'fundamental' and 'comprehensive' need" for that evidence. *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 384 (2004) (quoting *United States v. Nixon*, 418 U.S. 683, 709 (1974)). Thus, "privilege claims that shield information from a grand jury proceeding or a criminal trial are not to be 'expansively construed, for they are in derogation of the search for truth.'" *Id.* (quoting *Nixon*, 418 U.S. at 710).

To determine if a party is entitled to fact work product protection in the grand jury context, this circuit applies a test derived from the requirements in Rule 26(b)(3) and the common law principles enunciated in *Hickman v. Taylor*: "Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had." 329 U.S. 495, 511 (1947). That is, a grand jury is entitled to fact work product where the government shows that the grand jury has a

investigation or defense; or
(B) a statement made to the defendant, or the defendant's attorney or agent, by:
    (i) the defendant;
    (ii) a government or defense witness; or
    (iii) a prospective government or defense witness.

"substantial need" for the materials and that it has "exhausted other means of obtaining the relevant information it seeks."[7] *In re Grand Jury Proceedings*, 219 F.3d at 192.

Thus, we first determine if the government has shown a substantial need for the recordings. *Id.* Appellant argues that the government has not demonstrated that the grand jury has a legitimate need for the recordings, and opines that the government is seeking the recordings only to ensure there is no impeachment evidence against Broker. He also contends that the government should be held to a higher burden—that the recordings were "necessary" for the grand jury to fulfill its purpose. The government contends that it seeks the recordings to provide the grand jury with evidence it requires to determine the roles that brokers, including Appellant and Broker, played in the alleged fraud, and that the recordings will assist the grand jury in determining whether these individuals committed federal crimes.

A grand jury holds "broad powers" to collect evidence through judicially enforceable subpoenas. *See United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 423-24 (1983). Indeed, "nowhere is the public's claim to each person's evidence stronger than in the context of a valid grand jury subpoena." *In re Grand Jury Proceedings*, 219 F.3d at 186 (citation omitted). "Without thorough and effective investigation, the grand jury would be unable either to ferret out crimes deserving of prosecution, or to screen out charges not warranting prosecution." *Sells Eng'g, Inc.*, 463 U.S. at 424. This is accomplished only if the grand jury has access to the data it

---

[7]The district court erred in stating that Federal Rule of Civil Procedure 26(b)(3) governed its analysis, *see In re Grand Jury Subpoena*, 599 F.2d at 509, but because the common law test used to determine if the grand jury is entitled to fact work product substantially mirrors the test set forth in Rule 26(b)(3), the error was both understandable and harmless.

10

needs to decide whether it should return an indictment. Here, that data clearly includes the recordings.[8] We have no doubt the government showed that the grand jury has a "substantial need" for the recordings. *In re Grand Jury Proceedings*, 219 F.3d at 190.

The government must next show that it has "exhausted other means of obtaining the relevant information it seeks." *Id.* Appellant argues that the government should have asked him about the contents of the recordings in the interview at which he revealed the existence of the recordings. However, given that Appellant invoked attorney-client privilege regarding the recordings during that interview, it is highly unlikely that such questioning would have been productive because an attorney claiming the privilege would have been unlikely to then permit its breach in response to questions from the government. Appellant seeks to draw a distinction between the actual recordings, which he claims are not discoverable, and the contents of the recordings, which he suggests may be discoverable. Since this distinction is not, in our view, a real one, we decline to fault the government for not attempting to question Appellant further in that regard after he invoked attorney-client privilege. To require otherwise could force prosecutors to choose between their duty to respect attorney-client privilege[9] and the requirement

[8]Appellant contends that the government would be given an "advantage" over him if given access to the recordings because he has no reciprocal right to obtain any recordings the government may have made of conversations with witnesses. As the government points out, the grand jury is entitled to consider appropriate evidence, regardless of whether the person providing that information is granted reciprocal discovery to any like evidence in the government's possession. In any event, if Appellant is indicted, he will be able to seek such evidence in the normal course. *See, e.g.*, 18 U.S.C. § 3500.

[9]*See, e.g.*, *United States v. Castor*, 937 F.2d 293, 297 (7th Cir. 1991) ("Where the sixth amendment right to attorney-client confidentiality exists, prosecutorial violation of that privilege might lead to reversal of a resulting conviction if the defendant could show prejudice.").

to exhaust other means of obtaining information.

Appellant also argues that the government should have questioned Broker about the contents of the tapes. Appellant builds his argument on two district court cases, *EEOC v. Carrols Corp*., 215 F.R.D. 46 (N.D.N.Y. 2003) and *Gargano v. Metro-North*, 222 F.R.D. 38 (D. Conn. 2004). He contends that the government did not exhaust other means of obtaining the information in the recordings.

These two cases involve civil litigation, and are clearly distinguishable. In *Carrols Corp.*, a magistrate determined that a defendant was not entitled to the EEOC's witness questionnaires because the EEOC would provide the defendant with "witness summaries that will serve to identify the witness and provide at . . . least some insight into the witnesses' likely testimony." 215 F.R.D. at 52. "Armed with that information," the magistrate noted, the defendant could then avail itself of the normal civil discovery devices "to obtain more detailed information." *Id.* In *Gargano*, the plaintiff sought transcripts of interviews made by the defendant company soon after the incident that generated the litigation. 222 F.R.D. at 39. The defendant company provided the plaintiff with summaries of the interviews and the witnesses' handwritten statements presumably taken soon after the incident, and the plaintiff had already deposed two of the three witnesses and was scheduled to depose the third. *Id.* at 40. Holding that the plaintiff had not shown "substantial need,"[10] the magistrate noted that the plaintiff could question the witnesses "about the events at issue and about the contents of the oral statements";

---

[10]The magistrate either collapsed the two prongs of the Rule 26(b)(3) test or, finding that there was no substantial need, declined to determine if the plaintiff was "unable without undue hardship to obtain the equivalent by other means." *Garagno*, 222 F.R.D. at 40.

that the plaintiff had not argued "that the witnesses made statements to the claim agent that they could not later recall at their depositions"; and that there was no "evidence of inconsistency between the prior statements and the deposition testimony." *Id.*

There is a clear difference between the surreptitious recordings here and the questionnaires in *Carrols Corp.* and the interviews in *Garagno*. A post-accident interview, for example, where agents of a company query witnesses about the accident is a far cry from recording someone without his knowledge while discussing possibly criminal business transactions. It is reasonable to suppose that the witnesses in *Garagno* would give the same answers regardless of the identity of the questioner. It is equally likely that the employees given the questionnaires in *Carrols Corp.* would give similar answers if asked to complete a questionnaire prepared by the defendant. But there is no way to recreate the discussions between Appellant and Broker, which provide insight into Broker's role in the real estate transactions under grand jury review. *Accord In re Grand Jury Subpoena Dated Nov. 9, 1979*, 484 F. Supp. at 1104 (noting that certain "individuals whose statements were recorded will undoubtedly refrain" from repeating the statements to the grand jury). The district court did not err in concluding that it is unlikely that direct questioning of Appellant and Broker would reveal the same information contained on the recordings.

The government contends, and the district court found, that it could not obtain the information it seeks through alternative means, because the recordings are a unique memorialization of the conversations between Appellant and Broker that is not subject to "fading memories or contradiction." As Broker did not know that he was being recorded, the

13

government argues that the recordings provide insights into Broker's role in the alleged scheme that cannot be replicated by subsequent interviews. We agree. The grand jury seeks to determine whether Appellant, Broker, and others violated federal criminal law. The recordings, the existence of which Appellant freely admitted during his second interview, provide an unvarnished, unique insight into Broker's role in the real estate transactions. Appellant could have initially shielded these recordings by simply keeping quiet about them. But having informed the government of their existence, he cannot now escape the reach of the grand jury's subpoena given that the information contained on the recordings cannot be replicated.

We hold that the district court did not err in concluding that while the recordings were fact work product, Appellant was required to obey the grand jury's subpoena. The government established that the grand jury had a substantial need for the recordings and could not obtain the information through other means. *Cf. In re Grand Jury Proceedings*, 219 F.3d at 192.

## Conclusion

The district court's orders of October 19, 2005 and December 1, 2005, directing Appellant to comply with a grand jury subpoena dated July 6, 2005, are hereby AFFIRMED for the reasons set forth in this opinion and the companion summary order also filed on this date. Appellant is directed to comply forthwith with the grand jury's July 6, 2005 subpoena.