UNITED STATES of America,
Plaintiffs,

v.

Peter GHAVAMI, Gary Heinz, and
Michael Welty, Defendants.

No. 10 Cr. 1217(KMW)(JCF).

United States District Court,
S.D. New York.

June 5, 2012.

Charles Vincent Reilly, Eric C. Hoffmann, John Van Lonkhuyzen, Michelle Ofner Rindone, New York, NY, Jennifer Marie Dixton, Kalina M. Tulley, Neville Hedley, Chicago, IL, for Plaintiffs.

Erik March Zissu, James Alfred Mitchell, Mary Margulis-Ohnuma, Stillman, Friedman & Shechtman, P.C., Marc Lee Mukasey, Jonathan Nassau Halpern, Philip Joseph Bezanson, Bracewell & Giuliani, LLP, New York, NY, Gregory L. Poe, Jennifer Lee Meinig, Rachel S. Li Wai Suen, Poe & Burton PLLC, Washington, DC, for Defendants.

### MEMORANDUM AND ORDER

JAMES C. FRANCIS IV, United States Magistrate Judge.

This criminal proceeding presents, among other issues, the question of whether, and under what circumstances, the attorney-client privilege and work product protection are forfeited[1] when otherwise privileged communications are disclosed by an unwitting declarant to someone acting as a government cooperator. It also raises the problem of whether the privilege of a non-party may be breached in order to satisfy the government's obligation to disclose to a criminal defendant evidence that casts doubt on the credibility of a government witness.

The defendants, Peter Ghavami, Gary Heinz, and Michael Welty, are charged with rigging bids for investment instruments known as guaranteed investment contracts, or "GICs," which are sold by financial institutions to the issuers of municipal bonds. The charges include conspiracy, in violation of 18 U.S.C. § 371 (Count One of the Superseding Indictment); conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Counts Two and Four); and wire fraud, in violation of 18 U.S.C. § 1343 (Counts Three and Five).[2] During the course of its investigation, the government accumulated vast quantities of information, and it has produced to the defendants in discovery more than 600,000 audio files, including recorded telephone conversations from trading desks and consensual recordings. (Letter of Kalina M. Tulley, Neville S. Hedley, and Jennifer M. Dixton dated Oct. 7, 2011, at 3). In some instances, the government's "taint team" redacted material from the recordings based on claims of attorney-client privilege and work product protection asserted by third parties before making these recordings available to the

---

1. Although "forfeiture" is more accurate characterization of an involuntary loss of privilege than is "waiver," I will use the terms interchangeably in this opinion. Also, when I use variants of the term "privilege" standing alone, I am generally referring to both the attorney-client privilege and work product protection.

2. Mr. Heinz is also charged with witness tampering, in violation of 18 U.S.C. § 1512(b) (Count Six).

government's trial attorneys and to the defendants.

The government now moves for an order overruling claims of privilege or work product with respect to 27 consensual recordings so that it may produce unredacted versions of those recordings to its trial team and to the defendants. The government also seeks an order permitting disclosure of previously redacted portions of ten documents memorializing witness interviews. Initially, eight individuals or entities who have asserted the attorney-client privilege or work product protection (the "claimants") opposed the government's applications and sought to "claw back" the communications at issue. One of those entities, Privilege Claimant 7., has entered into a consent order with the government, mooting the government's motion with respect to that claimant.

At a series of hearings on June 4, 2012, I considered the arguments of the government and each of the privilege claimants and issued oral rulings to be followed by a written decision. This is that decision. I will begin by outlining the general principles governing privilege and work product and then will apply those principles to the circumstances of each privilege claimant.

*Legal Framework*

### A. Attorney–Client Privilege

▬ The attorney-client privilege protects from disclosure "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re County of Erie,* 473 F.3d 413, 419 (2d Cir.2007) (citing *United States v. Construction Products Research, Inc.,* 73 F.3d 464, 473 (2d Cir.1996)); *accord United States v. Mejia,* 655 F.3d 126, 132 (2d Cir.2011); *National Immigration Project of the National Lawyers Guild v. United States Department of Homeland Security,* 842 F.Supp.2d 720, 727–28 (S.D.N.Y.2012).[3] The privilege protects not only the advice of the attorney to the client, but also the information communicated by the client that provides a basis for giving advice. *See Upjohn Co. v. United States,* 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *In re Six Grand Jury Witnesses,* 979 F.2d 939, 943–44 (2d Cir.1992); *Oak-Jin Oh v. Sim & Park, LLP,* No. 12 MC 66, 2012 WL 1193755, at *1 (S.D.N.Y. April 10, 2012). "It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, a burden not discharged by mere conclusory or ipse dixit assertions." *In re Grand Jury Subpoena Dated Jan. 4, 1984,* 750 F.2d 223, 224–25 (2d Cir.1984) (citations and internal quotation marks omitted); *accord von Bulow by Auersperg v. von Bulow,* 811 F.2d 136, 144 (2d Cir. 1987); *Schanfield v. Sojitz Corp. of America,* 258 F.R.D. 211, 214 (S.D.N.Y.2009).

---

**3.** An alternative and more detailed articulation of the attorney-client privilege states that: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived. *United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO,* 119 F.3d 210, 214 (2d Cir.1997) (quotation marks and citation omitted); *see also Kingsway Financial Services, Inc. v. Pricewaterhouse–Coopers LLP,* No. 03 Civ. 5560, 2007 WL 473726, at *7 (S.D.N.Y. Feb. 14, 2007); *In re Rivastigmine Patent Litigation,* 237 F.R.D. 69, 73–74 (S.D.N.Y.2006); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,* 160 F.R.D. 437, 441 (S.D.N.Y.1995).

## 1. *Forfeiture*

■ It is well-established that voluntary disclosure of confidential material to a third party generally results in forfeiture of any applicable attorney-client privilege. *See Mejia,* 655 F.3d at 134; *United States v. Jacobs,* 117 F.3d 82, 91 (2d Cir.1997); *Ravenell v. Avis Budget Group, Inc.,* No. 08 CV 2113, 2012 WL 1150450, at *2 (E.D.N.Y. April 5, 2012). There are two circumstances, however, where the privilege is preserved notwithstanding such a disclosure. First, disclosure does not create a waiver when the third party is a necessary conduit of information between attorney and client. The Second Circuit has described this principle as follows:

> Under certain circumstances, [ ] the privilege for communication with attorneys can extend to shield communications to others when the purpose of the communication is to assist the attorney in rendering advice to the client. Thus, in [*United States v. Kovel,* 296 F.2d 918 (2d Cir.1961) ], we recognized that the privilege would extend to communications by an attorney's client to an accountant hired by the attorney to assist the attorney in understanding the client's financial information. Recognizing that the privilege would surely apply where a client who spoke only a foreign language furnished his confidential information to an interpreter employed by the attorney to translate for the attorney's benefit, Judge Friendly observed that accounting concepts can be as incomprehensible as a foreign language to attorneys. "Hence the presence of an accountant ... while the client is relating a complicated tax story to the lawyer, ought not destroy the privilege...." *Id.* at 922.

*United States v. Adlman,* 68 F.3d 1495, 1499 (2d Cir.1995) (alterations in original); *see also Urban Box Office Network, Inc. v. Interfase Managers, L.P.,* No. 01 Civ. 8854, 2006 WL 1004472, at *3 (S.D.N.Y. April 17, 2006) ("[A]n agent, such as a financial advisor, may have communications with an attorney that 'are covered by the attorney-client privilege if the financial advisor's role is limited to helping a lawyer give effective advice by explaining financial concepts to the lawyer.'" (quoting *Export–Import Bank of the United States v. Asia Pulp & Paper Co.,* 232 F.R.D. 103, 113 (S.D.N.Y.2005))); *People v. Osorio,* 75 N.Y.2d 80, 84, 550 N.Y.S.2d 612, 615, 549 N.E.2d 1183 (1989) ("[C]ommunications made to counsel through a hired interpreter, or one serving as an agent of either attorney or client to facilitate communication, generally will be privileged."). In this case, none of the privilege claimants has asserted that communication with a government cooperator was for the purpose of facilitating attorney-client communication, so this exception to forfeiture is inapplicable.

■ Second, disclosure does not result in forfeiture of the attorney-client privilege when the privilege holder and the third party share a common legal interest. The "common interest" doctrine, sometimes referred to as the "joint defense privilege,"

> precludes a waiver of the underlying privilege concerning confidential communications between the parties made in the course of an ongoing common enterprise and intended to further the enterprise, irrespective of whether an actual litigation is in progress. Thus, the common interest doctrine permits the disclosure of a privileged communication without waiver of the privilege provided the party claiming an exception to waiver demonstrates that the parties communicating: (1) have a common legal, rather than commercial, interest; and (2) the

disclosures are made in the course of formulating a common legal strategy. *Sokol v. Wyeth, Inc.,* No. 07 Civ. 8442, 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008) (internal quotation marks and citations omitted). The common interest doctrine does not provide an independent source of protection from disclosure and applies only to documents otherwise protected by the attorney-client privilege or work product doctrine. *Id.*

At its core, the common interest doctrine applies when multiple persons are represented by the same attorney. In that situation, communications made to the shared attorney to establish a defense strategy remain privileged as to the rest of the world. However, the doctrine is not limited to such situations. The weight of authority is that the common interest doctrine does extend at least to situations where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel. That is, the doctrine applies where parties are represented by separate counsel but engage in a common legal enterprise.

*Denney v. Jenkens & Gilchrist,* 362 F.Supp.2d 407, 415 (S.D.N.Y.2004) (internal quotation marks and citations omitted). The party seeking protection of the doctrine must show

that (1) there was an agreement between individuals, not necessarily in writing, "embodying a cooperative and common enterprise towards an identical legal strategy;" (2) the disputed communication "was given in confidence and that the client reasonably understood it to be so given;" and (3) a joint strategy among the individuals is apparent.

*Barcomb v. Sabo,* No. 07–CV–877, 2009 WL 5214878, at *3 (N.D.N.Y. Dec. 28, 2009) (quoting *Denney,* 362 F.Supp.2d at 415); *see also HSH Nordbank AG New York Branch v. Swerdlow,* 259 F.R.D. 64, 72 n. 12 (S.D.N.Y.2009).

### 2. *Corporate Privilege*

 Only the party that possesses the privilege may assert or waive it.

Where a corporate entity seeks legal advice, the attorney-client privilege belongs to the corporation alone. *See In re O.P.M. Leasing Services, Inc.,* 670 F.2d 383, 386 (2d Cir.1982). It follows that the privilege may be waived only by corporate officers or directors with the authority to do so. *See id.; Barcomb v. Sabo,* No. 07–CV–877, 2009 WL 5214878, at *4 (N.D.N.Y. Dec. 28, 2009); *Business Integration Services, Inc. v. AT & T Corp.,* 251 F.R.D. 121, 128 (S.D.N.Y. 2008).

*Winans v. Starbucks Corp.,* No. 08 Civ. 3734, 2010 WL 5249100, at *3 (S.D.N.Y. Dec. 15, 2010).

In *Upjohn,* the Supreme Court found that the corporate privilege extends to communications with employees beyond the "control group" because

[m]iddle-level—and indeed lower-level— employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties.

449 U.S. at 391, 101 S.Ct. 677.

Within a corporation, then, the attorney-client privilege protects communications by corporate employees to counsel for the corporation who is acting as a lawyer, as long as the communications are made at the direction of corporate superiors in order to secure legal advice and the employees are aware that they are being ques-

tioned in connection with the provision of such advice. *Id.* at 394–95, 101 S.Ct. 677; *see also Stampf v. Long Island Railroad Co.,* No. 07 CV 3349, 2009 WL 3628109, at *1 (E.D.N.Y. Oct. 27, 2009); *In re Copper Market Antitrust Litigation,* 200 F.R.D. 213, 218 (S.D.N.Y.2001); *Leucadia, Inc. v. Reliance Insurance Co.,* 101 F.R.D. 674, 678 (S.D.N.Y.1983). Once the privilege attaches, however, it may be waived only by someone with appropriate corporate decision making authority:

> [T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors. The managers, of course, must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals.

*Commodity Futures Trading Commission v. Weintraub,* 471 U.S. 343, 348–49, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) (footnote omitted); *see also Fitzpatrick v. American International Group, Inc.,* 272 F.R.D. 100, 107 (S.D.N.Y.2010); *Denney,* 362 F.Supp.2d at 412–15.

### B. *Work Product Doctrine*

 The work product doctrine, partially codified by Rule 26(b)(3) of the Federal Rules of Civil Procedure, "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman,* 134 F.3d 1194, 1196 (2d Cir.1998) (quoting *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947)); *see also In re Steinhardt Partners, L.P.,* 9 F.3d 230, 234 (2d Cir. 1993) ("The logic behind the work product doctrine is that opposing counsel should not enjoy free access to an attorney's thought processes."). To warrant protec-

tion, a document or communication must have been prepared in anticipation of litigation by or for a party, or by the party's representative. *See Koch v. Greenberg,* No. 07 Civ. 9600, 2012 WL 1449186, at *5 (S.D.N.Y. April 13, 2012); *Ravenell,* 2012 WL 1150450, at *4; *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.,* 215 F.R.D. 466, 474 (S.D.N.Y.2003). As explained by the Second Circuit, "documents should be deemed prepared 'in anticipation of litigation,' . . . if 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Adlman,* 134 F.3d at 1202 (emphasis omitted) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2024, at 343 (1994)). As with the attorney-client privilege, the burden of demonstrating the applicability of the work product doctrine lies with the party seeking its protection. *See In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002,* 318 F.3d 379, 384 (2d Cir.2003); *Koch,* 2012 WL 1449186, at *5.

 Rule 26(b)(3) provides immunity only for "documents and tangible things" otherwise qualifying as work product. But the work product doctrine, as originally articulated in *Hickman v. Taylor,* is broader than the Rule. *See In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002,* 318 F.3d at 383; *Crosby v. City of New York,* 269 F.R.D. 267, 277 (S.D.N.Y.2010); *Abdell v. City of New York,* No. 05 Civ. 8453, 2006 WL 2664313, at *3 (S.D.N.Y. Sept. 14, 2006). It also applies to intangible work product: an attorney's analysis made in anticipation of litigation, but which has not been memorialized. Such work product is immune from discovery just as if it had been reduced to writing. *See Hickman,* 329 U.S.

at 505, 509–11, 67 S.Ct. 385 (protecting mental impressions of attorney, whether or not memorialized); *United States v. Deloitte LLP,* 610 F.3d 129, 136 (D.C.Cir. 2010) (holding that "Hickman provides work-product protection for intangible work product independent of Rule 26(b)(3)"); *Abdell,* 2006 WL 2664313, at *3 (citing cases). This makes good sense. The fortuity of whether an attorney's thought processes have been memorialized should not determine whether they must be laid bare to an adversary. The principle that an opponent should not benefit from an attorney's efforts would be equally applicable in either circumstance.

▮▮▮ Indeed, the work product doctrine protects more than the mental impressions and strategies of counsel: "fact work product may encompass factual material, including the result of a factual investigation." *In re Grand Jury Subpoena Dated July 6, 2005,* 510 F.3d 180, 183 (2d Cir.2007) (citing *In re Grand Jury Subpoena Dated Oct. 22, 2001,* 282 F.3d 156, 161 (2d Cir.2002)). The difference lies in the degree of the protection afforded. That which reflects the mental processes of an attorney—opinion work product—is entitled to virtually absolute protection. *See United States v. Daugerdas,* No. 09 Cr. 581, 2012 WL 92293, at *2 (S.D.N.Y. Jan. 11, 2012); *In re Initial Public Offering Securities Litigation,* 249 F.R.D. 457, 460 (S.D.N.Y.2008). Fact or "ordinary" work product, by contrast, may be ordered disclosed upon a showing of substantial need. *See Gruss v. Zwirn,* 276 F.R.D. 115, 130 (S.D.N.Y.2011); *United States v. Sattar,* No. 02 Cr. 395, 2003 WL 22137012, at *20 (S.D.N.Y. Sept. 15, 2003).

▮▮▮ As with the attorney-client privilege, work product protection can be for-feited, but not simply by disclosure to a third person. To constitute a waiver, such disclosure must " 'substantially increase[ ] the opportunities for potential adversaries to obtain the information.' " *United States v. Stewart,* 287 F.Supp.2d 461, 468 (S.D.N.Y.2003) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2024 (1994), and citing *In re Copper Market Antitrust Litigation,* 200 F.R.D. 213, 221 n. 6 (S.D.N.Y.2001), and *In re Grand Jury Subpoenas Dated December 18, 1981 and January 4, 1982,* 561 F.Supp. 1247, 1257 (E.D.N.Y.1982)). Thus, in *Stewart,* the court found that disclosure by a criminal defendant of work product to her daughter did not substantially increase the risk that the government would gain access to it. *Id.* at 469. By comparison, in *Medinol, Ltd. v. Boston Scientific Corp.,* 214 F.R.D. 113, 115–17 (S.D.N.Y.2002), the court held that disclosure to an independent auditor did constitute waiver, in part because the auditor had a public responsibility that transcended its employment relationship to the disclosing party. *Id.* at 116.

*Analysis*

A. *Privilege Claimants 1, 2, and 3*

▮▮▮ Privilege Claimants 1 and 2 are partners in an investment management company, while Privilege Claimant 3 is the company itself. All three of these claimants assert the attorney-client privilege and work product protection with respect to recordings of conversations with Government Cooperator 1, an employee of a financial institution who had worked with Privilege Claimants 1, 2, and 3 in the GIC market under investigation.[4] Privilege

---

**4.** Privilege Claimant 1 asserts privilege with respect to the consensual recording identified as CR–1000019–C; Privilege Claimant asserts privilege as to CR–0000023, CR–0000026, CR–0000028, CR–0000037, CR–0000040, CR–0000041, and CR–0000043; Privilege Claim-

Claimants and 2 seek protection for portions of the recordings in which they recounted advice obtained from an attorney who was at the time representing each of them individually and also representing the company; the recordings appear to reflect legal advice given in both capacities.[5] The conversations were recorded by Government Cooperator 1 at a time when he was cooperating with the government and when Privilege Claimants 1 and 2 were targets of the investigation. Privilege Claimant 1 had long personal relationship with Government Cooperator 1.

The attorney-client privilege has been forfeited with respect to each of the recordings for which Privilege Claimants 1 and 2 seek protection. Each of these claimants had the capacity to waive privilege with respect to communications with his personal attorney, and each did so by relating those communications to someone outside the attorney-client relationship: Government Cooperator 1. As partners in the company, these claimants were also capable of waiving the privilege on behalf of Privilege Claimant 3, which, again, each did by sharing the communications with a third party.

 Work product protection, however, remains intact for the communications at issue. These communications were made in anticipation of litigation. And, while they were revealed to Government Cooperator 1, this did not effect a forfeiture of the protection. Work product protection is waived only if disclosure to a third party substantially increases the risk that it will be obtained by an adversary, in this case the government. This risk must be evaluated from the viewpoint of the party seeking to take advantage of the doctrine. As far as Privilege Claimants 1 and 2 knew, they were disclosing work product not to a government agent, but to a friend who was similarly positioned in relation to the government's investigation and who had seemingly shared his own privileged information with them. To be sure, there is always some danger that the recipient of work product is, or will later become, an informant. But that cannot constitute a "substantial risk" that the work product would be disclosed to the adversary. If it did, the exception would swallow the rule, and the distinction between waiver of the attorney-client privilege and waiver of work product would be rendered a nullity, at least in the criminal context.

As discussed above, the work product doctrine provides only qualified protection. However, to the extent that the recordings at issue here contain factual work product rather than the mental impressions of counsel, the government has not articulated a specific substantial need for disclosure. A showing that information is important to support some specific defense or to undermine a particular aspect of the government's case in a criminal proceeding may well constitute such a substantial need, but a generalized proffer of "relevance" is insufficient.

 The recordings sought to be protected only by Privilege Claimant 3 contain conversations between an employee of the company and Government Cooperator 1. The communications contained on these recordings are protected not only by the work product doctrine for the reasons set forth above, but also by the attorney-client privilege, since they recount discussions

---

ant asserts privilege with respect to all of the recordings that are the subject of Privilege Claimants 1 and 2's claims and also as to CR–0000030 and CR–0000036.

5. For example, CR–0000023 appears to contain legal advice to Privilege Claimant 3, the company, while CR–0000037 seems to relate to personal legal advice to the claimant.

between the employee and counsel for Privilege Claimant 3 when counsel was attempting to obtain information in order to provide legal advice to Privilege Claimant 3. The privilege belongs to Privilege Claimant 3, and the employee did not have the capacity to waive it.

The government contends that by redacting any reference to counsel and retaining only the factual material, it could obviate any claim of privilege. For example, according to the government, a communication in the form, "I told the attorney 'X'," from which the words "I told the attorney" are redacted would not be entitled to protection as subject to the attorney-client privilege or the work product doctrine. I disagree. One of the purposes of the privilege is to encourage the provision of information to counsel (including counsel for corporate entities) so that the attorney can provide informed advice to the client. Likewise, one of the purposes of the work product doctrine is to protect counsel's efforts in anticipation of litigation, including its fact-gathering, from invasion by an adversary. These purposes would be undermined by the line the government seeks to draw, a distinction unsupported by the cases.

Accordingly, the government's application to overrule claims of attorney-client privilege and work product protection with respect to Privilege Claimants 1, 2, and 3 is denied. In addition, the government shall recover from its trial team and from defense counsel any notes reflecting the privileged information.

B. *Privilege Claimant 4*

■ Privilege Claimant 4 was an employee of a financial institution. He asserts the attorney-client privilege, the work product doctrine, and the joint defense privilege in connection with conversations recorded by Government Cooperator 2 and Government Cooperator 3.[6] Each of the recordings apparently contains Privilege Claimant 4's descriptions of conversations with his personal attorney, but in some instances the information recounted had been provided to the attorney by counsel for the financial institution or by counsel with whom Privilege Claimant 4's attorney had a joint defense agreement. (Declaration of Nina Beattie dated Feb. 15, 2012, ¶¶ 9, 10).

Government Cooperator 2 was previously an employee of a company that acted as a broker for GICs and which was a subject of the government's investigation. At the time of the recorded conversations, Government Cooperator 2 had left the broker and was working for the same the financial institution as Privilege Claimant 4 and under his supervision. Government Cooperator 3, a longtime personal friend of Privilege Claimant 4, worked at the broker and, like Privilege Claimant 4, was a target of the investigation.

■ To the extent Privilege Claimant 4 relayed information that his attorney had learned in communications with other persons that were parties to the joint defense agreement, the attorney-client privilege has not been waived. As noted above, while the joint defense or common interest doctrine does not create an independent privilege, it does operate as an exception to what otherwise would be a waiver. Insofar as Privilege Claimant 4 discussed with government cooperators communications that he had with his attorney that did not involve information obtained in the course of the joint defense efforts, the attorney-client privilege is waived by virtue of the disclosures made outside the

**6.** The recordings at issue are CR–0000051, CR–0000053, CR–0000056, CR–0000057, CR– 0000058, CR–0000059, CR–0000063, and CR–0000205.

attorney-client relationship. However, for the reasons discussed in connection with Privilege Claimants 1, 2, and 3, work product protection has not been forfeited; disclosure to other persons similarly situated in relation to the government's investigation, who related their own privileged communications, and who had professional and personal relationships with the person asserting the protection does not operate as a waiver. Therefore, all of the recordings relating to Privilege Claimant 4 are protected by either the attorney-client privilege, the work product doctrine, or both. To the extent that the government has disclosed CR–0000051 and CR–0000056, it shall recover them from its trial team and from defense counsel.

### C. *Privilege Claimant 5*

Privilege Claimant 5 was an employee of a financial institution. He asserts the attorney-client privilege, work product protection, and the joint defense privilege with respect to one consensual recording [7] of a conversation with Government Cooperator 4, with whom he had enjoyed a close social and professional relationship for twenty-five years, and who, along with his own employer, was also a target of the investigation. (Affirmation of Martin J. Auerbach dated Feb. 15, 2012 ("Auerbach Aff."), ¶ 4). At the time of the recording, Privilege Claimant 5 was a target of the government's investigation. (Auerbach Aff., ¶ 5). The recording contains information about conversations that Privilege Claimant 5 had with his personal attorney, who in turn recounted information obtained from counsel for the financial institution and communications between his attorney and counsel for members of a joint defense group comprised of individuals who were targets or subjects of the investigation. (Auerbach Aff., ¶¶ 6, 7, 9). The financial institution has indicated that it has not authorized waiver of, and, indeed, wishes to assert, the attorney-client privilege for communications with its counsel. (Auerbach Aff., ¶ 8; Letter of Howard J. Rubin dated March 9, 2012, attached to Letter of Martin J. Auerbach dated March 12, 2012).

The analysis here parallels that for Privilege Claimant 4. Although Privilege Claimant 5 could waive the attorney-client privilege regarding communications with his own attorney, he could not do so to the extent those communications included what the attorney learned in connection with a joint defense strategy. Moreover, work product protection was not waived by disclosure to Government Cooperator 4. Accordingly, CR–200000–247 remains exempt from disclosure in this case.

### D. *Privilege Claimant 6*

Privilege Claimant 6 consists of UBS AG, UBS Financial Services, Inc., and UBS Securities LLC (collectively "UBS").[8] It asserts the attorney-client privilege in connection with conversations recorded by Government Cooperator 5, who was then a UBS employee, or Government Cooperator 6. Each of the conversations includes at least one UBS employee (or, in one case, a former UBS employee) who describes communications he or she had with counsel for UBS.[9] In some cases, it was the confidential informant himself who revealed the purportedly confidential information. (Opposition of UBS Privilege Holders to Application of United States for

---

7. CR–2000000–247.

8. Unlike the other privilege claimants, UBS has revealed its identity in publicly filed documents.

9. The recordings at issue are CR–0000010, CR–0000011–001, CR0000011–002, CR–1000013–032, and CR–1000013–68.

an Order Resolving Claims of Attorney–Client Privilege or Attorney Work Product as to Consensual Recordings at 9–10). UBS also contends that two memoranda of interviews by government agents of a government cooperator who was then a UBS employee, documents known as 302 Memoranda, contain information protected from disclosure by the attorney-client privilege or the work product doctrine. Finally, UBS maintains that an e-mail from the same cooperator recounting a conversation with defendant Gary Heinz and two other persons includes work product. Most of the contested communications relate to internal investigations that arose from payments to UBS by another financial institution, payments that were previously the subject of an Internal Revenue Service information request and some news coverage.

■ As previously discussed, a corporate employee without authority cannot effect waiver of a privilege that belongs to the corporation. Nor is the privilege limited to references to counsel; it extends to communications of facts to counsel in connection with the provision of legal advice. Accordingly, the UBS recordings and 302 memoranda are privileged and subject to the work product doctrine.

■ Nevertheless, the government contends that an otherwise protected portion of the contested e-mail must be disclosed because it constitutes potential impeachment material under *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Specifically, the government contends that the e-mail from a government cooperator, who is likely to testify at trial, reveals that he gave false information to counsel during the course of the internal investigation.

The relationship between *Giglio* and the attorney-client privilege has not been clearly defined. *See United States v. De-Fonte*, 441 F.3d 92, 94–96 (2d Cir.2006) (remanding case to district court for determination of whether communications sought by criminal defendant under *Giglio* were privileged); *United States v. Dunbar*, 590 F.2d 1340, 1343 (5th Cir.1979) (finding it unnecessary to reach issue because further impeachment evidence would have been cumulative). In the circumstances of this case, however, *Giglio* does not warrant overriding the privilege. Here, the government informant himself breached the privilege by volunteering the substance of what he had told corporate counsel. The government cannot now use that breach to justify making the privileged information public. It can attempt to reach agreement with counsel for UBS to craft a characterization of the privileged communication that would satisfy its *Giglio* obligations as well as the needs of the defense.

### E. *Privilege Claimant 8*

■ Privilege Claimant 8 is a financial institution. One of its former employees was interviewed by the government during the investigation, and memoranda were prepared summarizing these interviews. That employee has since pled guilty to charges arising out of the GIC investigation and is cooperating with the government. According to Privilege Claimant 8, five of these memoranda contain the employee's recollection of his communications with in-house counsel for Privilege Claimant 8 as to which Privilege Claimant 8 never waived the attorney-client privilege.[10] (Declaration of Thomas Mueller dated April 5, 2012, ¶¶ 5, 8, 9).

10. The interview memoranda at issue are dated February 7, 2008; February 8, 2008; February 14, 2008; May 20, 2009; and September 29, 2009.

The memoranda clearly reflect privileged communications that the employee was not authorized by Privilege Claimant 8 to disclose. As with Privilege Claimants 1, 2, and 3, the government suggests that the privilege as held by a corporate entity does not extend to facts conveyed to corporate counsel. As discussed above, I disagree. Of course, if the government were to obtain the facts from the employee directly or from some other independent source, it could use them. However, it cannot rely on what it has obtained from a privileged communication where the privilege has not been forfeited.

*Conclusion*

For the reasons set forth above, the portions of the recordings and documents at issue all reflect communications that are subject to the attorney-client privilege, the work product doctrine, or both, the protection of which has not been forfeited. Accordingly, the government's motion (Docket no. 84) is denied, and the government shall recover and return those recordings and documents that were previously disseminated beyond its taint team. Notwithstanding this decision, counsel for the privilege claimants and for the government are encouraged to work together to determine the extent to which additional redactions can be made that would satisfy the interests of all parties.

SO ORDERED.