**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**The NIR GROUP, LLC and Corey Ribotsky, Defendants.**

**No. CV 11–4723 (JFB)(GRB).**

United States District Court, E.D. New York.

Aug. 17, 2012.

George S. Canellos, Joseph Patrick Dever, Jr., Kenneth V. Byrne, Howard A. Fischer, Securities and Exchange Commission, New York, NY, for Plaintiff.

Douglas Roy Hirsch, Jennifer Amy Rossan, Samuel Jay Lieberman, Sadis & Goldberg LLC, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

BROWN, United States Magistrate Judge:

Before the Court is a motion by defendants NIR Group, LLC and Corey Ribotsky (collectively, "defendants") to compel, *inter alia,* production of documents from plaintiff, Securities and Exchange Commission ("SEC"). *See* Mot. to Compel Disc., Docket Entry ("DE") [34] ("Motion to Compel"). The SEC opposes the motion, largely on the grounds of privilege. *See* Resp. in Opp'n re Mot. to Compel Disc., DE [40] ("Opposition to Motion to Compel"). For the reasons set forth herein, the Court finds that the SEC has sustained its burden of demonstrating that the work product privilege applies to notes and memoranda generated from witness interviews conducted by the Division of Enforcement for the purpose of determining whether to bring this litigation, but failed to meet that burden as to material generated by the Office of Compliance, Inspections, and Examinations ("OCIE").

## BACKGROUND

The SEC brought this action against defendants and another former NIR employee, Daryl Dworkin ("Dworkin") (against whom this action was voluntarily dismissed), for allegedly defrauding investors in connection with securities transactions. *See* Compl., DE [1]. Most of the ensuing proceedings are not directly relevant here. Several discovery disputes arose on or after April 13, 2012. *See* DE [34], [40], [51], [52], [53], [54], [55], [56]. Arguments were heard and decisions issued regarding all pending discovery motions on July 12, 2012. *See* DE [57]. This Memorandum and Order addresses outstanding issues from Defendants' Motion to Compel dated April 13, 2012.[1] *See* Mot. to Compel.

Defendants seek an order compelling the SEC to produce three categories of documents identified in their privilege log: (1) documents described as "NYRO–OCIE Staff Exam Notes"; (2) documents described as "Handwritten Notes of various witness and investor interviews"; and (3) documents described as "Interview Memos," authored by interns and an SEC accountant, relating to interviews of various witnesses. *See* Mot. to Compel 3. Though it had asserted several privileges as bases to withhold the documents, on this motion, the SEC argues only that the documents are protected by the work product privilege.

---

1. Defendants originally sought (1) agreements between the SEC and witnesses; (2) substitution of a traditional privilege log in lieu of the SEC's 'categorical' privilege log; (3) a more detailed version of the SEC's April 6, 2012 privilege log; (4) communications between the SEC and liquidators of "the AJW funds"; and, (5) notes and memoranda from interviews with witnesses (including those mentioned herein). *See* Mot. to Compel 1–3. The SEC addressed (1) the agreements consummated with witnesses, when the SEC agreed prior to turn them over in their Opposition to defendants' motion. *See* Opp'n to Mot. to Compel 1 n. 1. At the hearing on July 12, 2012; (2) Defendants conceded that the SEC did not need to produce the items in the categorical privilege log, except for communications between the SEC and Dworkin's counsel (which might be included in Category 8) and the contemporaneous witness memos (Category 5), both of which will be addressed more specifically in a forthcoming SEC privilege log; (3) Defendants identified deficiencies in the April 6, 2012 privilege log, and the SEC agreed to supplement the privilege log on these counts; and, (4) Defendants consented to the SEC supplementing its privilege log on the matter of communications with the liquidators of the AJW funds before seeking to compel such documents. *See* Hr'g Tr., July 12, 2012.

As to the work product privilege, defendants point out that some of the documents were drafted by non-attorneys; some documents were drafted in the course of SEC examinations that predate the filing of this action by more than two years; and even if the documents are privileged, they are "no more than fact work product," the protection of which is outweighed by Defendants' substantial need for the documents in order to sort out which witnesses to depose and obtain the contemporaneous recollection of witnesses who may have forgotten events. *See* Mot. to Compel 3.

The SEC, on the other hand, contends that notes from witness interviews and memoranda summarizing them are generally protected by the work product privilege, including notes that may reflect only the witness's answers, and documents drafted by non-attorneys. Opp'n to Mot. to Compel 2–3. The SEC also disputes that protection of the documents will cause Defendants any hardship, since they are free to depose any of the long list of witnesses they choose. Opp'n to Mot. to Compel 3. The SEC argues that the OCIE exam notes are irrelevant here, and in the alternative, contends that examinations undertaken "based on a suspicion of specific wrongdoing and represent[ing] an effort to obtain evidence and to build a case against the suspected wrongdoer" are covered by the privilege. Opp'n to Mot. to Compel 3. The SEC submits the affidavits of two of its employees alleging that the 2008–09 examination regarding the NIR Group was such an examination. Opp'n to Mot. to Compel Ex. E ¶¶ 3–4, Ex. F ¶¶ 3–9. The SEC also submits for in camera review samples of the interview notes and memoranda. Opp'n to Mot. to Compel Exs. A–D.

## DISCUSSION

■ As a threshold matter, the burden is on a party claiming the protection of a privilege to provide evidence sufficient to establish the essential elements of the privileged relationship. *In re Grand Jury Subpoena,* 750 F.2d 223, 224–225 (2d Cir.1984) (citing *In re Bonanno,* 344 F.2d 830, 833 (2d Cir.1965); *United States v. Kovel,* 296 F.2d 918, 923 (2d Cir.1961)) (internal quotation marks omitted);

*see also United States v. Stern,* 511 F.2d 1364, 1367 (2d Cir.1975) (citing *Bonanno,* 344 F.2d at 833) (applying standard to attorney-client privilege). This burden cannot be discharged by mere conclusory or *ipse dixit* assertions. *In re Grand Jury Subpoena,* 750 F.2d at 224–225.

■ "The work-product doctrine, codified for the federal courts in Fed.R.Civ.P. 26(b)(3), is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." *United States v. Adlman,* 134 F.3d 1194, 1196 (2d Cir.1998) (citing *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947)) (internal quotation marks omitted). Rule 26(b)(3) states that, subject to limited exceptions:

> [A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

Fed.R.Civ.P. 26(b)(3).

■ The scope of the phrase "in anticipation of litigation" is essential to resolution of the instant motion. The Second Circuit addressed this issue in *United States v. Adlman:* the privilege applies to documents "prepared 'because of' existing or expected litigation." *Adlman,* 134 F.3d at 1198. *Adlman* established a test of actual causation for this determination: where a document would not have been prepared in substantially the same form but for the prospect of litigation, the privilege applies; where the document would have been prepared in the same fashion in any event, it goes unprotected. *Id.* at 1204.

■ Voluntary disclosure of confidential, privileged material to a third party generally waives an applicable privilege. *Sokol v. Wyeth, Inc.,* No. 07 Civ. 8442, 2008 WL 3166662, at *5, 2008 U.S. Dist. LEXIS 60976, at *15 (S.D.N.Y. Aug. 4, 2008). But such disclosure does not waive the work product privilege unless the disclosure substantially increases the opportunity for potential adver-

saries to obtain the information. *In re Grand Jury Subpoenas Dated Dec. 18, 1981 & Jan. 4, 1982*, 561 F.Supp. 1247, 1257 (E.D.N.Y.1982) (citing *Transamerica Computer Co. v. IBM*, 573 F.2d 646, 647 n. 1 (9th Cir.1978); *GAF v. Eastman Kodak Co.*, 85 F.R.D. 46, 51–52 (S.D.N.Y.1979); 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2024 (1979)). Moreover, the so-called "common interest doctrine" permits the disclosure of privileged information without waiver, provided that the parties sharing the information "(1) have a common legal, rather than commercial, interest; and (2) the disclosures are made in the course of formulating a common legal strategy." *United States v. Ghavami*, No. 10 Cr. 1217, —— F.Supp.2d ——, ——, 2012 WL 2090800, at *2–3, 2012 U.S. Dist. LEXIS 80593, at *9–10 (S.D.N.Y. June 5, 2012) (citing *Sokol*, 2008 WL 3166662, at *2, 2008 U.S. Dist. LEXIS 60976, at *5); *see also Complex Sys., Inc. v. ABN AMRO Bank N.V.*, 279 F.R.D. 140, 147 (S.D.N.Y.2011) (finding that, because entities entered into Common Interest/Joint Defense Agreement affirming "mutual common legal interest . . . as potential defendants," sharing of work product materials and information did not waive work product protection). The party seeking to invoke a privilege carries the burden of establishing that the privilege has not been waived. *Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F.Supp. 187, 191 (S.D.N.Y.1988) (citing 8 Wright & Miller, Federal Practice and Procedure § 2016, at 126 (1970)).

### NYRO–OCIE Staff Exam Notes

■ The SEC failed to establish that the NYRO–OCIE Staff Exam Notes ("Exam Notes") constitute privileged attorney work product. The SEC principally fails to demonstrate that the documents were prepared "because of" existing or expected litigation. *Adlman*, 134 F.3d at 1198. One need look no further than the SEC's own filings in this matter to make this determination. For example, a declaration by OCIE's Assistant Regional Director states:

> OCIE suspected, based on information obtained in the course of performing its duties and responsibilities under the federal securities laws, that two broker-dealers at the same location were committing acts that might constitute violations of various federal securities laws and regulations and of the rules and regulations promulgated by the Financial Industry Regulatory Authority. The purpose of these examinations was to obtain evidence and determine whether there have been violations of the federal securities laws, and, if appropriate, refer the matter to the SEC's Enforcement Division for further action. Examinations by OCIE may result in one, or a combination of decisions being made regarding the disposition of the examination. One such disposition may be a referral of the matter to the SEC's Division of Enforcement for further investigation and possible Enforcement action.

Opp'n to Mot. to Compel Ex. E ¶¶ 3–4. According to this evidence, then, these materials were not prepared by counsel in anticipation of litigation, but were prepared for a number of purposes, including a *possible* referral to counsel for *potential* further investigation which *could* lead to an enforcement action. *Cf.* Securities & Exchange Commission, Examinations by the Securities and Exchange Commission's Office of Compliance Inspections and Examinations 30 (Feb. 2012), *available at* http://www.sec.gov/about/offices/ocie/ocieoverview.pdf ("When the registrant's compliance or internal control failures are serious, such as when the staff believes investor funds or securities are at risk, the [OCIE] staff may refer the matter to the Division of Enforcement. The Division of Enforcement then determines whether to investigate the matter further and ultimately whether to recommend an enforcement action to the Commission."); *see also S.E.C. v. Nadel*, No. 11–CV–0215, 2012 WL 214162, at *3 (E.D.N.Y. Jan. 24, 2012) (citing February 2011 version of same document). Under the circumstances of this case, it would appear that the OCIE documents "would have been prepared irrespective of the anticipated litigation." *See Adlman*, 134 F.3d at 1201.

Even more telling is the declaration of one of the SEC attorneys in this matter, who plainly states:

> Neither of these broker-dealers are parties in this case or are the subject of the SEC's

action before the Court. Nothing from these examinations played any role in the decision by the SEC to bring the charges against Defendants that are the subject of the above-captioned action, and nothing in the Complaint or in the preceding investigation relied on, or was derived from, these OCIE examinations.

Opp'n to Mot. to Compel Ex. 1 ¶ 7. Therefore, while *in theory,* the documents have a possible connection—though highly attenuated—to litigation, *in fact,* the records have no relationship to the case. Based on that, it is hard to imagine what mental impressions of counsel the SEC is trying to protect. Remote suspicion of civil violations, and the attendant increased attention towards preservation of evidence, does not make the examination any more "because of" litigation.

Finally, the SEC opted not to supply any *in camera* examples of the OCIE notes. In short, the SEC has not met the Second Circuit standard of proving that the OCIE documents here were prepared "because of" litigation.

*Notes and Memoranda Relating to Witness and Investor Interviews*

*Are the Notes and Memoranda Subject to Work Product Protection?*

By contrast, the SEC makes a substantial showing regarding notes and memoranda of attorney-conducted witness interviews prepared by an SEC attorney, a staff accountant and a legal intern as part of the Division of Enforcement's investigation into the defendants. Opp'n to Mot. to Compel Ex 1. ¶ 2–3. In his declaration, Kenneth Byrne, a Senior Counsel for the Division of Enforcement, states that these interviews "were conducted in order to provide the Commission with information so that it could determine whether or not to proceed with litigation in this matter." *Id.* ¶ 4. An *in camera* review of examples of these documents confirms that the notes and memoranda at issue are consistent with Mr. Byrne's description—investi-

gative interviews conducted by counsel in anticipation of potential litigation against the defendants. Documents of this nature are clearly protected by the privilege. *Adlman,* 134 F.3d at 1202 ("a document . . . prepared because of the prospect of litigation warrants application of Rule 26(b)(3)"). In a case similar to the instant matter, one Court found:

> [T]he notes were taken by SEC attorneys during interviews that, although they preceded the formal initiation of this litigation, were conducted 'in order to provide the Commission with information so that it could make the determination whether to proceed with litigation in this matter.' This type of work, prepared in the anticipation of litigation, falls squarely within the protections of the work-product doctrine. *Id.* The interviews here were similarly conducted in order to determine whether to initiate litigation.

*S.E.C. v. Stanard,* No. 06 Civ. 7736, 2007 WL 1834709, at *1–2 (S.D.N.Y. June 26, 2007).[2]

■ Defendants argue that these documents are not subject to work product protection because "at least 18 of the witnesses were interviewed in 2009—three years ago." Mot. to Compel 3. It is true that "[c]ourts evaluating interview notes taken by a government agency prior to the commencement of litigation often look to the length of time between the interviews and the decision to initiate litigation." *Nadel,* 2012 WL 214162, at *2. For example, in *S.E.C. v. Treadway,* 229 F.R.D. 454, 455–456 (S.D.N.Y.2005), the Court held that "[t]he close proximity of the dates on which the notes were prepared to the date on which the instant action was filed, as well as the contents of the notes, make clear that the notes were prepared 'in anticipation of litigation.' " Similarly, in another SEC action, the court found it significant that the documents withheld had been prepared "six or seven weeks before the SEC notified the defendants of its intent to initiate a civil action." *Stanard,* 2007 WL 1834709, at *2.[3]

---

**2.** Even though it was decided post-*Adlman, Stanard* improperly employed the more restrictive "primarily to assist in litigation" test set forth in *United States v. Davis,* 636 F.2d 1028, 1040 (5th Cir.1981), which is discussed further below. *Id.*

("Rule 26(b)(3) 'applies only to documents prepared principally or exclusively to assist in anticipated or ongoing litigation.' ").

**3.** It is interesting that these two courts used different measures—the filing of a civil complaint

Does the amount of time that has transpired between the preparation of a document and the commencement of civil litigation bear upon whether that document qualifies for work product protection? One can imagine situations in which it does not. Suppose, for example, that a lawyer prepares a memo for a client on the advisability of filing a civil breach of contract action, laying out theories of litigation, strengths and weaknesses of the case, and trial strategies. The application of the work product privilege to such a document cannot turn on whether the client files an action the next day, or waits nearly six years before filing. This issue is further complicated by the fact that, in some instances—such as where the client is a potential defendant in a civil action—the client is not in control of the timing of the commencement of the litigation. In other instances—as may be the case here (though the SEC has not made a showing to this effect)—civil litigation may await the commencement or conclusion of parallel criminal proceedings. While this last example may represent a strategic choice by government counsel, such a choice would not vitiate the mental impressions contained in work product prepared by counsel, irrespective of the passage of time.

While close temporal proximity may provide some indication a particular document was prepared in anticipation of litigation, temporal distance is ultimately an unreliable indicator of the applicability of work product privilege. As the Fifth Circuit observed, "litigation need not necessarily be imminent, as some courts have suggested, as long as the primary motivating purpose behind the creation of the document was to aid

in possible future litigation." *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir.1981).[4] And the hypotheticals used by the *Adlman* court to illustrate the "because of litigation" test—such as pre-closing evaluations of a corporate transaction that could result in litigation, or the provision of a legal memorandum to support financial statement reserves for projected litigation—serve to demonstrate the applicability of the privilege irrespective of the timing of litigation. *Adlman*, 134 F.3d at 1199.

Defendants also argue that the notes and memoranda are not work product because they were not prepared by attorneys. The work product privilege protects documents produced by staff working at an attorney's direction, in addition to those prepared by the attorney herself. *See S.E.C. v. Strauss*, No. 09–CV–4150, 2009 WL 3459204, at *6 (S.D.N.Y. Oct. 28, 2009) (citing *United States v. Nobles*, 422 U.S. 225, 238–39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) ("It is ... necessary that the [work-product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself."); *S.E.C. v. Nacchio*, No. 05–cv–00480, 2007 WL 219966, at *10 (D.Colo. Jan. 25, 2007) ("The work-product doctrine is no less applicable to materials prepared in anticipation of litigation by SEC accountants working under the direction or at the behest of Commission attorneys.")). Byrne's declaration asserts, and an *in camera* review of the examples provided confirms, that these documents were prepared by a legal intern and an SEC staff accountant under the direction of counsel and/or recorded counsel's mental impressions during the course of the investigative interviews.[5]

and the issuance of a Wells notice—to calculate the relevant time period.

**4.** Although the Second Circuit has rejected the "primarily to assist in litigation" test first set forth in *Davis*, the Circuit did not reject the proposition that "litigation need not be imminent." *See Adlman*, 134 F.3d at 1198. In fact, the Second Circuit read the privilege in a way that broadens the scope of the privilege beyond *Davis*, noting that Rule 26(b)(3) "expressly goes beyond documents 'prepared ... for trial.'" *Id.* at 1199.

**5.** At oral argument, defendants suggested that because some of the interviews were jointly conducted with the Department of Justice, a disclosure to the DOJ would constitute a waiver of work-product because of the increased likelihood that the notes would be produced in criminal discovery. First, there is no evidence that the SEC's representatives disclosed its work product to the Department of Justice officials with which it worked; the sample interview notes the SEC submitted for *in camera* review were, apparently, recorded for the SEC's internal use. *See* Opp'n to Mot. to Compel Ex. B. Moreover, as the discovery rules governing civil

### Can Defendants Overcome the Work Product Privilege?

■ The next question is whether the defendants can overcome the work product privilege based on a showing of sufficient need. *Hickman,* 329 U.S. at 511, 67 S.Ct. 385. Different kinds of attorney work product command different levels of protection. The most protected category includes "mental impressions, conclusions, opinions or legal theories of an attorney or other representative," and even a showing of 'substantial need' can be insufficient to compel disclosure of such materials. *Adlman,* 134 F.3d at 1204 (citing Fed.R.Civ.P. 26(b)(3)). Facts may also be protected by the work product privilege. *See, e.g., Doe v. United States (In re Grand Jury Subpoena Dated Oct. 22, 2001),* 282 F.3d 156, 161 (2d Cir.2002) (noting that the fruits of a private investigator's examination of a crime scene as an example of fact work product that could be protected). However, a party may discover relevant and non-privileged facts, even those "hidden in an attorney's file," where the facts are "essential to the preparation of one's case." *Hickman,* 329 U.S. at 511, 67 S.Ct. 385. Circumstances that might justify the production of such evidence include where the witnesses are no longer available or are difficult to reach. *Id.*

■ Even a showing of substantial need may not justify production of work product that will inevitably reveal the attorney's mental processes as he prepares for litigation, though such work product may set forth or relate directly to third-party statements. *See Hickman,* 329 U.S. at 513, 67 S.Ct. 385; *Upjohn Co. v. United States,* 449 U.S. 383, 401, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). But where a witness's statements can be effectively isolated from the representative's thoughts, even where the representative took a hand in soliciting and deciding how to document the witness's statements, a showing of sufficient need may justify disclo-sure. *See In re John Doe Corp.,* 675 F.2d 482, 493 (2d Cir.1982).

■ A party representative's mental impressions, conclusions, opinions and legal theories remain highly protected work product. *Adlman,* 134 F.3d at 1204. The Court has reviewed samples of attorney Kenneth Byrne's notes and the interview memoranda prepared at his direction. Opp'n to Mot. to Compel Exs. A–D. The notes and memoranda, though they may contain factual assertions by the interviewee, prominently feature Byrne's questions, follow-up points, and notations such as enumeration that cannot be adequately extricated from the facts. This is highly protected work product of which production may not be demanded.

■ Even if the facts from the interview notes could be extricated from the attorney's mental impressions, defendants fail to demonstrate substantial need for the documents. Defendants point to the sheer number of interviewees—53 people, by defendants' estimate, for whom there is no recorded testimony—as evidence that they need the interview notes and memoranda. Mot. to Compel 3. Defendants argue that, without access to the SEC's documentation of their interviews, defendants would have to depose all 53 individuals to even determine the relevancy of their testimony to the instant case. *Id.* Such an argument does not meet the standard of need contemplated by *Hickman,* which provides that facts from the adversary's casefile are discoverable only where they are "essential to the preparation of one's case." *Hickman,* 329 U.S. at 511, 67 S.Ct. 385. Of course, Defendants have no shortage of options for narrowing the SEC's list of interviewees down to an essential group without resorting to the expense of in-person depositions for all 53 witnesses: examples include asking the witnesses to speak informally (many if not all of the SEC interviews appear to have been voluntary); and deposing wit-

litigation are more liberal than those in the criminal context, it is doubtful that any disclosure to the Department of Justice "substantially increased" the potential for defendants or other SEC adversaries to obtain the information. *In re Grand Jury Subpoenas,* 561 F.Supp. at 1257. Finally, the SEC's notification to defendants of the possibility of enforcement action less than

two months after the prosecution of Dworkin commenced sufficiently supports the SEC/DOJ common legal interest and that any disclosures which did take place would have furthered their concurrent, common legal strategies. *See Ghavami,* —— F.Supp.2d at ——, 2012 WL 2090800, at *2–3, 2012 U.S. Dist. LEXIS 80593, at *9–10.

nesses one at a time, gathering information at each stage to determine which other witnesses may require a deposition. Defendants have taken none of these steps, and so provide the Court no basis for assessing just how "essential" it may be that defendants gain access to any facts in the SEC's case file. Furthermore, defendants' argument presumes that the defendants have absolutely no insight into which witnesses may be important, which based on the involvement of defendants in the industry, as well as the discovery provided to date, seems highly unlikely. Finally, defendants have not demonstrated that any of those witnesses have become unavailable.

Thus, even to the extent there may be discoverable facts in the notes and memoranda, defendants have failed to demonstrate sufficient need for such information.

## CONCLUSION

The Court finds that the SEC has sustained its burden of demonstrating that the work product privilege applies to the notes and memoranda relating to Division of Enforcement witness interviews, but failed to meet that burden as to the OCIE material. Accordingly, defendants' motion is DENIED as to the notes and memoranda prepared by the Division of Enforcement, and GRANTED as to the OCIE material.

**SO ORDERED:**