# IN THE SUPREME COURT OF IOWA

No. 22–1703

Submitted March 20, 2024—Filed May 10, 2024

**STATE OF IOWA,**

Petitioner,

vs.

**IOWA DISTRICT COURT FOR EMMET COUNTY,**

Respondent.

Certiorari to the Iowa District Court for Emmet County, Jeffrey A. Neary, Judge.

State petitions for review of district court order regarding the assessment of costs for conducting privilege review of electronic information obtained via search warrant. **WRIT SUSTAINED.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Brenna Bird, Attorney General, and Zachary Miller (argued), Assistant Attorney General, for petitioner.

Martha J. Lucey (argued), State Appellate Defender, for respondent.

**McDONALD, Justice.**

A county sheriff's office applied for and obtained a search warrant to seize and search the email account of a criminal defendant in a public corruption case. The search warrant provided that the seized materials would be turned over to the district court to review the seized materials for communications protected by the attorney–client privilege. The district court was unable to complete the review as ordered in the search warrant and decided to hire a technology vendor to assist in the privilege review. The question presented in this appeal is who is responsible for the costs of the technology vendor hired to assist in conducting the privilege review of the email account information: the defendant, the prosecution, or the judicial branch? Applying the old rule, "You break it, you buy it," we conclude the judicial branch should be responsible for the costs of the technology vendor hired to assist in conducting the initial privilege review under the particular facts presented here.

I.

This dispute over the responsibility for technology vendor expenses arises out of the public-corruption investigation and prosecution of former Armstrong police chief Craig Juan Merrill. On April 13, 2021, Merrill was charged in a twenty-one-count trial information with ongoing criminal conduct, in violation of Iowa Code sections 706A.1(5) and 706A2(4); theft in the first degree, in violation of Iowa Code sections 714.1(1), 714.1(2), and 714.2(1); assault with a dangerous weapon, in violation of Iowa Code sections 708.1, 708.2(3), and 702.7; and nonfelonious misconduct in office, in violation of Iowa code sections 721.2(2), 721.2(3), and 721.2(5).

As part of the criminal investigation, Emmet County Sheriff Mike Martens applied for a search warrant to seize and search Merrill's email account. The search warrant application sought subscriber, email, messenger, and group

information associated with a Yahoo! Mail account that Merrill used. In the affidavit supporting the search warrant application, Sheriff Martens stated that it is "reasonable to believe that the [subject] account was used by Defendant Merrill during the relevant time period and contains evidence of criminal activity, including but not limited to the offenses already charged in the trial information."

Cognizant that the email account may have contained privileged communications between Merrill and his attorney, the State "tr[ied] to do the right thing, making sure the [S]tate didn't accidentally get anything [it] w[as]n't supposed to get." In an ex parte search warrant hearing before the district court, the State discussed the possibility of having a taint team review the seized materials for attorney–client privileged information prior to producing the seized materials to the investigators and prosecutors. A "taint team" or "filter team" is comprised of attorneys or other law enforcement employees "shielded from the investigation itself by ethical walls to ensure that there are no leaks of information before the review process has been completed." 2 Paul R. Rice et al., *Attorney-Client Privilege in the United States* § 11:19, Westlaw (database updated Dec. 2023) [hereinafter Rice et al., *Attorney-Client Privilege*]. In this case, it was decided that a taint team was not "an ideal route to go down," although the reasons for deciding against the use of a taint team are not clear from the record. Instead of using a taint team, the district court thought it "would be no big deal for [it] to look at [the emails]" and conduct the privilege review.

The search warrant set forth the procedure by which the seized materials would be obtained and then submitted to the district court for the initial privilege review:

> The Emmet County Sheriff or designee shall receive the material set forth for seizure by this warrant via the custodian's Law Enforcement Portal or other means, but shall not review or disclose those items to any person. Instead, the material shall be placed on

an external drive and produced to this Court for *en camera* review. The Emmet County Sheriff or designee shall not retain any copies of the original file produced by the custodian.

This Court will review the material *en camera* to ensure no attorney–client privileged materials are inadvertently produced to the State of Iowa. To effectuate this review, the Court upon receipt of the material shall direct counsel for Craig Merrill to provide the Court with a written statement no later than 10 days following notice from the Court. The written statement produced by counsel must identify a general date range and associated e-mail addresses for any attorney–client privileged communications that were sent to or from the named e-mail account in relation to a criminal investigation or prosecution. Counsel shall provide the same to the State of Iowa, who may review and lodge any objection to the items designated as attorney–client privileged. The Court will resolve any dispute, with or without hearing at the Court's election. If counsel for Craig Merrill believes no attorney–client privileged communications are contained within the seized materials, counsel shall so state and the Court will release the seized material to the Emmet County Sheriff or designee without review.

Subject to further order of this Court, the Court will remove attorney–client privileged communications that relate to a criminal investigation or prosecution from the material before releasing the material to the Emmet County Sheriff or designee. The Court may conduct this process by use of a search function or any other means the Court deems appropriate.

The initial privilege review ultimately did not proceed as ordered in the search warrant. Pursuant to the search warrant, Merrill provided a statement identifying email addresses for any attorney–client privileged communications that were sent to or from the named email account. Sometime afterward, Sheriff Martens delivered to the district court a drive with the seized materials. The district court attempted to conduct the privilege review. However, several technological issues thwarted the court. The drive contained over 5,800 emails. Because of the volume of emails, the district court thought it best to conduct a name search. After conducting a name search, the district court "[didn't] think the search that's within the program [was] pulling through every single e-mail." The district court then contemplated searching through each email individually,

one click at a time. The district court concluded that this option would take too much time. The judge also believed that if she opened each email individually, she would alter the metadata and leave a forensic fingerprint. The district court then contacted the information technology department in the judicial branch to see whether there was a more refined way to conduct the search, but "they were mystified" how one could do so.

Unsure of what to do next, the district court judge brought this matter to the attention of a different judge. The second judge held a hearing at which the first judge, the prosecutor, and Merrill's counsel were present. The first judge described the difficulties she encountered in conducting the privilege review. The prosecutor explained that he spoke to Merrill's counsel and that neither party was comfortable with the other party conducting the privilege review. This sentiment left the parties "at a spot where . . . an independent IT forensics firm or person do[es] this reviewing." Merrill's counsel "agree[d] that [they] need[ed] a third party probably to do it." The second judge directed the parties to draft an order that would "excuse [the first judge] from her responsibilities that she assumed earlier" under the search warrant and appoint a technology vendor to conduct the privilege review of the seized email account information. Although the parties agreed that a third party should conduct the privilege review, they disagreed as to who was to pay the third-party vendor's fees. The prosecutor argued that the parties should "split it 50-50." Merrill's counsel countered that this was the "cost of the [S]tate" and that it should not fall "upon Mr. Merrill to pay for the government's search warrant."

Several weeks after the hearing, the district court entered an order regarding the seized materials. The district court ordered the Emmet County Sheriff to retrieve the drive from the judge issuing the search warrant, create a copy of it, and provide the copy of the seized materials to third-party vendor

Digital Intelligence to conduct the privilege review. The order further stated that "[t]he Court [was] informed that the parties do not agree who will bear costs on this matter" and commanded each party to file a statement on costs.

The parties filed competing statements on costs. Merrill contended the State should bear the costs of the vendor because the State always bears the costs of executing search warrants. He argued the district court's inability to perform the review and subsequent decision to hire a third-party vendor were not the result of Merrill's actions. The State responded that the "Iowa Judicial Branch should bear the costs to be paid to Digital Intelligence to conduct [the] privilege review." It further contended that "[i]n the alternative, the defendant should bear the entire cost of reviewing his emails for privileged materials."

The district court ordered that the costs were to be paid by the prosecution initially but left open the possibility that the costs could be taxed to the defendant at the conclusion of the case. The district court reasoned that:

> The Judicial Branch is not a party to this action and in that regard the Attorney General's Office is correct. Accordingly, a non-party cannot be ordered to pay the costs of the third-party privilege review of the computer hard drive seized as part of the search warrant . . . .
>
> There is no precedent under Iowa law for the payment of these costs by the Iowa Judicial Branch as urged by the State of Iowa. The search warrant executed herein was initially sought and obtained by the State of Iowa. The claim of privilege was then asserted by the Defendant as to some number of email communications on the hard drive between this Defendant and his legal counsel. It appears preliminarily that there is merit to the assertion of this privilege but whether in fact there is privileged material on the computer hard drive remains undetermined at this time. The Court views the costs related to the privilege review of the computer hard drive as a cost of prosecution that may be taxable at the conclusion of the case in the event of a conviction. Accordingly, the State must pay the privilege costs charged by the third-party which will conduct the review, namely Digital Intelligence. Whether such costs are prosecution costs and whether they may be taxed to the Defendant at the conclusion of the case need not be determined at this time as the matter has not been concluded. This may be revisited at the

conclusion of the case if appropriate and taxation of said costs is sought.

Accordingly, the State of Iowa shall first pay or advance the costs of Digital Intelligence in the conducting of the privilege review of the computer hard drive and the issue of taxation of those costs at the conclusion of the case is reserved.

The State filed a petition for writ of certiorari with this court. This court granted the petition. Under the Iowa Rules of Appellate Procedure, Merrill's counsel was required to defend the district court order. However, Merrill's counsel filed a motion to withdraw because Merrill's interests are not aligned with the district court's order. In Merrill's view, he should not have to pay the costs of conducting the privilege review, full stop. He is largely indifferent as to whether the investigating agency or the judicial branch is responsible for the costs of the vendor conducting the privilege review. We granted the motion to withdraw. The Office of State Appellate Defender thereafter appeared to defend the order of the district court.

## II.

Protecting the sanctity of a criminal defendant's attorney–client communications when conducting a criminal investigation is significant. A criminal investigation that intrudes into privileged attorney–client communications may raise constitutional concerns. "While the attorney–client privilege is not derived from the constitution, violation of the privilege may implicate the Sixth Amendment right to counsel." *Wemark v. State*, 602 N.W.2d 810, 815 (Iowa 1999); *see also Partington v. Gedan*, 961 F.2d 852, 863 (9th Cir. 1992) ("A violation of the attorney–client privilege implicates the Sixth Amendment right to counsel only under certain circumstances—specifically, when the government interferes with the relationship between a criminal defendant and his attorney."); *Preventive Med. Assocs., Inc. v. Commonwealth*, 992 N.E.2d 257, 270 (Mass. 2013) ("It is possible . . . that government intrusion

into the attorney–client privilege may rise to the level of a violation of a defendant's Sixth Amendment rights . . . ."). Further, it has been argued that searches and seizures that do not adequately safeguard attorney–client communications violate the Fourth and Fifth Amendments. *See, e.g., United States v. Skeddle*, 989 F. Supp. 890, 894–99 (N.D. Ohio 1997).

In addition to these constitutional concerns, the government's attorneys are under an ethical obligation to respect the privileged communications of criminal defendants. "Responsibility to a client requires a lawyer to subordinate the interests of others to those of the client, but that responsibility does not imply that a lawyer may disregard the rights of third persons." Iowa R. of Prof'l Conduct 32:4.4 cmt. 1. The lawyer's obligation to consider the rights of third persons, "include[s] legal restrictions on methods of obtaining evidence from third persons and unwarranted intrusions into privileged relationships, such as the client–lawyer relationship." *Id.*; *see also In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 187 (2d Cir. 2007) (recognizing that prosecutors have a "duty to respect attorney–client privilege").

In taking precautions to protect the defendant's privileged communications, the district court could have proceeded in several ways. The district court could have ordered that a taint team or filter team conduct the first round of privilege review rather than volunteering to conduct the privilege review on behalf of the parties. Numerous courts around the country have discussed the use of taint teams or filter teams to conduct the first round of privilege review. The reaction of courts to the use of taint teams or filter teams has ranged from outright rejection to cautious acceptance to open endorsement. *Compare In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006) (reasoning that "taint teams present inevitable, and reasonably foreseeable, risks to privilege" and holding "that the use of a government taint team [was] inappropriate in the

present circumstances"), *with United States v. Hunter*, 13 F. Supp. 2d 574, 583 n.2 (D. Vt. 1998) (declining to suppress evidence obtained through filtering protocol but acknowledging that "[i]t may be preferable for the screening of potentially privileged records to be left not to a prosecutor behind a 'Chinese Wall,' but to a special master or the magistrate judge"), *and United States v. Triumph Cap. Grp., Inc.*, 211 F.R.D. 31, 43 (D. Conn. 2002) ("The use of a taint team is a proper, fair and acceptable method of protecting privileged communications when a search involves property of an attorney.").

When a taint team is employed to review seized materials, the seized materials are first turned over to the taint team for review. After the taint team conducts its review of the materials and segregates privileged materials from nonprivileged materials, the district court must then direct how the materials are to be produced to the investigators and prosecutors. A review of the relevant cases and authorities shows that courts have employed a variety of processes and protocols to govern the release of materials to the prosecution team. *See generally* Elizabeth Williams, Annotation, *Attorney-Client Privilege: Use of Taint or Filter Teams in Federal Investigations and Prosecutions*, 74 A.L.R. Fed. 3d Art. 5 (2022), Westlaw (database updated May 2024) (discussing cases and protocols); Edward J. Imwinkelried, *The Adequacy of Filter Team Protocols to Protect Evidentiary Privileges During the Pretrial Stage*, 84 La. L. Rev. 465, 472–82 (2024) (describing five different protocols applied to govern taint teams); Christina M. Frohock, *Special Matters: Filtering Privileged Materials in Federal Prosecutions*, 49 Am. J. Crim. L. 63 (2021) (discussing use of filter teams). In some cases, the taint team produces the nonprivileged materials directly to the criminal investigators. In other cases, the materials are provided to a judge for review of privilege determinations prior to production. Where the materials are

provided to a judge, the judge may hold no hearing, an ex parte hearing, or an adversarial hearing.

The district court also could have ordered a copy of the materials to be provided to the defendant and have the defendant's counsel conduct a privilege review subject to court approval. This procedure was suggested in *In re Grand Jury Subpoenas*, 454 F.3d 511. There, a federal grand jury issued subpoenas *duces tecum* to third parties. *Id.* at 513. The government intended to screen out privileged material through a taint team. *Id.* The investigated parties intervened and demanded the right to conduct their own privilege review of the documents. *Id.* The United States Court of Appeals for the Sixth Circuit agreed a taint team was inappropriate and therefore the district court erred in siding with the procedure selected by the government. *Id.* at 518. The intervenors suggested a procedure whereby they would provide the government with a list of the attorneys and firms that represented them, a paralegal retained by their counsel would review the materials while in possession of the third party and segregate potentially privileged materials, and then the intervenors' counsel would prepare a privilege log for the segregated materials. *Id.* at 516. The Sixth Circuit recognized that this procedure "seems to reflect a fairly standard practice by which law firms conduct privilege reviews when responding to government subpoenas or other discovery requests." *Id.*

The district court also could have appointed a special master to assist in conducting the privilege review. This method is common when the government obtains potentially privileged information from third parties. *See* Rice et al., *Attorney-Client Privilege* § 11:20. It was also discussed, and ultimately approved, in the Sixth Circuit decision discussed above. *See In re Grand Jury Subpoenas*, 454 F.3d at 514. There, the Sixth Circuit ordered the appointment of a special master. Under the procedure outlined in that case, a special master was to

conduct an initial review of the materials and segregate any documents containing a word identified in a list provided by the intervenors and approved by the district court. *Id.* at 524. The special master was then to pass the nonprivileged documents to the government and the segregated documents to the intervenors' counsel to determine privilege. *Id.*

We need not decide today which of these methods of protecting privileged communications is required or appropriate because the sole issue presented in this appeal is the assessment of costs for the technology vendor hired to assist in this case. However, among the options for reviewing seized materials for privileged communications, the district court's decision to take responsibility for conducting the privilege review is disfavored. Rather than conducting the initial privilege review itself, the district court should distance itself from the initial privilege review so that it can later rule on contested claims of privilege as necessary.

With respect to costs, the State contends that the district court acted illegally in assessing the costs of the privilege review against the prosecution because "[n]o statute authorizes a district court to order the State to pre-pay a special master in a criminal case." In the State's view, court costs are taxable only to the extent provided by statute, no statute permits taxing the costs of a special master to a party, and, thus, the district court acted without authority. The State relies on this court's opinions in *City of Cedar Rapids v. Linn County*, 267 N.W.2d 673, 673 (Iowa 1978) (stating that court costs "are taxable only to the extent provided by statute"), and *Grant v. Iowa District Court*, 492 N.W.2d 683, 685 (Iowa 1992) (explaining that "[t]he district court lacks inherent power to tax court costs").

The State also argues that the Code supports the conclusion that the judicial branch is responsible for the costs of the privilege review. The State

contends that Digital Intelligence was hired as a special master to assist the district court with the privilege review. Citing Iowa Code section 602.1508 (2022), the State argues that the compensation of special masters is the responsibility of the court. The State also relies on authorities from other jurisdictions. In *State ex rel. Merrell v. Carter*, the Missouri Supreme Court concluded that "the trial court lacked authority to assess the special master's fees against the county because no statute or rule of criminal procedure provides for the assessment." 518 S.W.3d 798, 799 (Mo. 2017) (en banc). There, the trial judge "appointed a retired judge as special master with orders to review the jail phone call files, redact all calls between Defendant and his attorneys, and send the redacted electronic phone logs to counsel." *Id.* Similarly, in *People v. Superior Court*, the California Supreme Court found that the costs of a special master "must be paid from public funds allocated to the superior court." 23 P.3d 563, 587 (Cal. 2001). The court concluded that the superior court lacked both the statutory and inherent authority to assess the costs to the State, *id.* at 586, and reasoned that "the fees of the special master properly are deemed to be a cost of court operations incurred in support of judicial officers," *id.* at 587.

The Appellate Defender marshals several arguments in response. The Defender emphasizes that the Emmet County Sheriff's Office and the Department of Public Safety are responsible for the costs of their investigation and that defendants cannot be responsible for the costs associated with the government's investigation. The Defender also attacks the central premise of the State's argument, contending that Digital Intelligence is not a special master under Iowa law. Specifically, the Defender argues that special masters perform a judicial function and "[t]he task of segregating privileged emails is not a judicial function."

After full consideration of the parties' arguments and reviewing the relevant authorities, we conclude the judicial branch should be responsible for the costs of the technology vendor employed in this case. In reaching that conclusion, we need not resolve whether the Code authorizes the costs to be taxed or whether Digital Intelligence was employed as a special master. Here, in the search warrant, the district court took responsibility for conducting the initial privilege review. The seized materials were to be provided to the district court rather than the parties, and the district court ordered that it would "review the material *en camera* . . . [and] remove attorney–client privileged communications." Ultimately, the district court was unable to conduct the privilege review as directed in the search warrant and was compelled to employ a third-party vendor to carry out the task it voluntarily assumed. Under these unique circumstances, we conclude the judicial branch, in all fairness, must be held responsible for the costs of the vendor it employed.

**WRIT SUSTAINED.**